Filed 2/18/25  Martinez v. Midway Venture CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOSEPHINA ESTRELLA MARTINEZ, | D083934 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2023-00014435-CU-OE-CTL) |
| MIDWAY VENTURE, LLC, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, James A. Mangione, Judge.  Affirmed.

Vivoli Saccuzzo and Jason P. Saccuzzo; The Federici Law Firm and Michael L. Federici for Defendant and Appellant.

Rosenberg, Shpall and Zeigen and Chad F. Edwards for Plaintiff and Respondent.

I

INTRODUCTION

Midway Venture, LLC (Midway Venture) appeals an order denying its motion to compel arbitration of a sexual harassment lawsuit filed by its

former putative employee, Josephina Estrella Martinez. The trial court denied the motion after finding that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (the Act, or EFAA; 9 U.S.C. §§ 401–402) permitted Martinez to void the parties' arbitration agreement. We agree that the Act rendered the arbitration agreement voidable and allowed Martinez to litigate her case in court. Therefore, we affirm.

## II

## BACKGROUND

A. *Factual Background*

Midway Venture owns and operates Pacers Showgirls International (Pacers), a strip club located in the Midway District of San Diego. Peter Balov is the owner of Midway Venture.

In 2012, Midway Venture hired Martinez to promote the club and drive customers, exotic dancers, and others to and from the club.

On September 12, 2021, Martinez executed an agreement requiring her to arbitrate, on an individual basis, "any dispute, claim, action, or controversy that may arise out of or in any way relate to … any contractual or legal relationship" between herself and Midway Venture, such as "claims related to … discrimination, failure to prevent discrimination, harassment, retaliation, … [and] wrongful or constructive discharge," and "[c]laims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, including … the California Fair Employment and Housing Act … and the California Labor Code."

Martinez alleges Balov and several Pacers managers sexually assaulted and sexually harassed her throughout her putative employment with Midway Venture—both before and after the effective date of the Act, March 3, 2022.

In the following instances, the alleged misconduct occurred largely or entirely before the effective date of the Act.

- In 2019, Martinez attended the company Christmas party with a date. During the party, a Pacers manager named Carlos Rodriguez approached Martinez and told her, "if [your date is] not fucking you properly, I will do it."

- Between 2018 and 2022, Balov regularly instructed Martinez to drive Balov and his friends around town. Dozens of times, Balov's companions had sex in the company's van while Martinez was driving it. Martinez complained to Balov about his companions' conduct several times, but he told her to ignore it and "just turn the music up."

In the following instances of alleged misconduct, Martinez does not identify precisely when the misconduct occurred, or she describes it as occurring during a nonspecific period of 2022, thus leaving open the possibility it occurred before or after the effective date of the Act, or both.

- Sometime in 2022, Martinez drove Balov and his wife around town. While Martinez drove them, Balov invited her to a sex party and she declined the invitation.

- In early 2022, Martinez's supervisor, Shay Leung Smith, tried to kiss her and convince her to use cocaine. Martinez rebuffed Smith's advances and the drugs she was offered. Thereafter, Shay retaliated against Martinez by cutting her work hours and refusing to pay her money owed.

- Balov and another Pacers manager, T.J. Hazelbaker, made sexist and demeaning comments to Martinez throughout her employment. Balov "consistently" called her derogatory epithets like "whore" and "bitch." For example, he made comments like, "My little whore is going to bring the car around," or "tell that stupid bitch to wait outside." On "multiple" occasions, Hazelbaker called Martinez a "stupid Mexican bitch" and made derogatory

3

statements like, "all women [are] whores" and "stupid bitches." Hazelbaker also leered at Martinez's body and breasts.

- On unspecified occasions, Rodriguez—the Pacers manager who said he would have sex with Martinez at the company Christmas party—became inebriated, tried to stuff money down Martinez's bra, brushed up against her breasts, and tried to kiss her, hug her, or touch her bottom. These sexual assaults continued "until she left the company" in October 2022. Martinez complained to Balov about Rodriguez's behavior, but "nothing was done."

The following examples of alleged sexual assault or sexual harassment occurred after the effective date of the Act.

- In mid-2022, Martinez drove Smith and other Pacers managers around San Diego. Smith—who was seated in the front seat—again tried to kiss Martinez and grope her breasts. Martinez pushed Smith off and told her to stop. Martinez reported the incident, presumably to Balov or another Pacers manager, "but nothing was done." Smith retaliated against Martinez by cutting her hours further and again refusing to pay her wages owed.

- In June 2022, Balov tried to tip Martinez for driving him. He stuffed money down her bra and brushed up against her breasts.

- In July 2022, Balov called to Martinez while he was entertaining a customer in the club. Balov told the customer Martinez had just gotten a breast augmentation surgery and said, "Hey Josie! Let's see those boobs!"

- In September 2022, Balov instructed Martinez to drive his son and his son's friends around town. As she drove them, Balov's son showed nude pictures of his wife stored on his cell phone to the other passengers.

Martinez suffered a nervous breakdown and stopped working at Pacers in October 2022.

4

B. *Procedural Background*

On April 6, 2023, Martinez filed a charge with the Department of Fair Employment and Housing (DFEH) and received a right-to-sue notice.[1]

On April 7, 2023, Martinez filed a complaint in the superior court against Midway Venture, Balov, and other Pacers managers and supervisors. The 21-count complaint asserted sexual harassment, discrimination, and wage-and-hour causes of action against the defendants. Only the first two causes of action are relevant here. They allege hostile work environment sexual harassment (count 1) and quid pro quo sexual harassment (count 2) in violation of the Fair Employment and Housing Act (FEHA).

Midway Venture moved to compel arbitration of the case pursuant to the arbitration agreement Martinez executed in September 2021. Midway Venture acknowledged that the Act authorizes an individual alleging sexual harassment or sexual assault to invalidate a predispute arbitration agreement in any case relating to the harassment or assault. However, Midway Venture argued the Act did not apply in the present action because it applies only to claims or disputes that arise or accrue on or *after* the effective date of the Act, March 3, 2022. According to Midway Venture, Martinez alleged sexual harassment beginning as early as 2012 and her sexual harassment claims therefore accrued *before* the effective date of the Act.

Martinez opposed Midway Venture's bid to compel arbitration. She argued she could invoke the Act to void the arbitration agreement because she alleged a continuing course of sexual harassment that persisted after the effective date of the Act, even though it started before the effective date. She

---

[1] The DFEH has been renamed the Civil Rights Department. However, we will refer to the agency as the DFEH to maintain consistency with the allegations of the complaint.

asserted her causes of action reaccrued with each wrongful act constituting the continuing course of harassment, including each act that occurred after the law went into effect.[2]  Together with her opposition brief, Martinez filed a declaration in which she repeated the allegations from her complaint.

Midway Venture filed a reply in support of its motion to compel arbitration.  It reiterated its position that Martinez's claims accrued before the effective date of the Act.  Midway Venture also argued the Act did not apply because the parties' *dispute* (as opposed to Martinez's *claims*) arose before the effective date of the Act.  According to Midway Venture, the dispute arose when Martinez first complained to Balov about the alleged sexual harassment and he brushed it aside—events that occurred before the effective date of the Act.

After a hearing, the trial court found the arbitration agreement voidable under the Act and denied Midway Venture's motion to compel arbitration.  Midway Venture filed a timely notice of appeal from the order denying its motion to compel arbitration.

## III

## DISCUSSION

A. *Standard of Review*

" ' "The trial court may resolve motions to compel arbitration in summary proceedings, in which ... 'the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination.' " ' [Citation.]  The party seeking to compel arbitration bears

---

[2]    Martinez also opposed the motion on grounds unrelated to the Act. Because these arguments are not pertinent here, we do not recount the arguments or Midway Venture's responses thereto.

the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense." (*Doe v. Second Street Corp.* (2024) 105 Cal.App.5th 552, 564 (*Second Street*).)

"Ordinarily, we review a denial of a petition to compel arbitration for substantial evidence or an abuse of discretion, but where the trial court's denial of a petition to arbitrate presents a pure question of law, including a question of statutory interpretation, we review the order de novo." (*Second Street, supra,* 105 Cal.App.5th at p. 564.) " ' " ' " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning.' " ' " [Citation.] " '[W]e look to "the entire substance of the statute ... in order to determine the scope and purpose of the provision .... [Citation.]" [Citation.] That is, we construe the words in question " 'in context, keeping in mind the nature and obvious purpose of the statute ....' " ' " (*People v. Walker* (2024) 16 Cal.5th 1024, 1032.)

B. *FAA and EFAA*

Both parties agree the Federal Arbitration Act (the FAA; 9 U.S.C. § 1 et seq.) governs their arbitration agreement. Congress enacted the FAA in 1925 "to 'overrule the judiciary's longstanding refusal to enforce agreements to arbitrate' and to place such agreements ' "upon the same footing as other contracts, where it belongs." ' " (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 383.) The FAA provides that, in general, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4." (9 U.S.C. § 2.)

The FAA "stands as 'a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.' " (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 235.)  It aims "to make 'arbitration agreements as enforceable as other contracts, but not more so.' " (*Morgan v. Sundance, Inc.* (2022) 596 U.S. 411, 418.)  In other words, it compels a court to "hold a party to its arbitration contract just as the court would to any other kind," but it does not allow "a court … [to] devise novel rules to favor arbitration over litigation." (*Ibid.*; see also *ibid.* ["the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules"].)

In 2022, Congress passed and President Joseph R. Biden, Jr. signed the Act, which added Chapter 4—consisting of sections 401 and 402—to the FAA. (Pub.L. No. 117–90, § 2, 136 Stat. 26, 26–27 (2022).)  A House Judiciary Committee report described the purpose of the Act as follows:

> "Due to the prevalence of [forced arbitration] clauses in employment and consumer disputes, victims of sexual violence and harassment are often unable to seek justice in a court of law, enforce their rights under state and federal legal protections, or even simply share their experiences. … [¶]

> "In many forced arbitration cases, the company is entitled to choose the arbitrator who decides the case, as well as the rules of procedure and evidence that apply, and the distribution of costs of the arbitration.  The rules also protect the company by keeping the records of an arbitration secret.  Because the records in arbitration are protected, employers that use arbitration clauses in their employment contracts can retaliate against a victim– rather than confront the harasser or the attacker–without fear of their actions becoming public through the courts.  The secretive nature of arbitration also prevents victims from sharing their stories.  This allows for the growth of office cultures that ignore harassment and retaliate against those who report it, prevent future victims from being warned about dangerous companies

and individuals, and create incentives for the corporate protection of rapists and other serial harassers. [¶]

"[The Act] would restore access to justice for millions of victims of sexual assault or harassment who are currently locked out of the court system and are forced to settle their disputes against companies in a private system of arbitration that often favors the company over the individual."

(H.R.Rep. No. 117-234, 2d Sess., pp. 3–4 (2022).)

Newly enacted section 402 states, "Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." (9 U.S.C. § 402(a).) For purposes of this appeal, it is uncontested Martinez alleges conduct constituting a sexual harassment dispute or sexual assault dispute.[3]

Section 401 defines "predispute arbitration agreement" as "any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement." (9 U.S.C. § 401.) It defines "sexual assault dispute" as "a dispute involving a nonconsensual sexual act or sexual contact." (*Ibid.*) And it defines "sexual harassment dispute" as

---

[3] When one claim in a case alleges conduct constituting a sexual harassment dispute or sexual assault dispute under the Act, the plaintiff may void the arbitration agreement for purposes of the entire case. (*Second Street, supra*, 105 Cal.App.5th at pp. 573–577; *Liu v. Miniso Depot CA, Inc.* (2024) 105 Cal.App.5th 791, 802–807.) Thus, if the Act applies to either of Martinez's sexual harassment claims, her entire case may proceed in court.

"a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." (*Ibid.*)

A statutory note to the Act states, "This Act, and the amendments made by this Act, shall apply with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act." (Pub.L. No. 117–90, § 3, reprinted in notes foll. 9 U.S.C. § 401.)[4] The statutory note " 'provide[s] two distinct calculations, either of which is sufficient to trigger the EFAA: when the 'dispute[ ] ... *arise*[*s*]' and when the 'claim[ ] ... *accrue*[*s*].' ' " (*Second Street, supra*, 105 Cal.App.5th at p. 566; see *Papaconstantinou-Bauer v. Jackson Hosp. & Clinic, Inc.* (M.D. Ala., Mar. 18, 2024, No. 2:22cv178-MHT) 2024 U.S. Dist. Lexis 47044, at *13 (*Papaconstantinou-Bauer*) ["the EFAA applies to disputes that arise or claims that accrue on or after March 3, 2022"]; *Barnes v. Festival Fun Parks, LLC* (W.D.Pa. June 27, 2023) 2023 U.S. Dist. Lexis 112915, at *28 ["Congress chose to place 'dispute' and 'claim' in the disjunctive, separating and distinguishing each noun from the other."].) Thus, the Act applies—and authorizes a plaintiff to void a predispute arbitration agreement in a case relating to a sexual assault dispute or sexual harassment dispute—if *either* the plaintiff's claim accrues, *or* the parties' dispute arises, on or after the Act's effective date.

C. *The Arbitration Agreement Is Voidable Because the Parties' Dispute Arose After the Effective Date of the Act*

The central contested issue on appeal is whether the Act applies to the parties' arbitration agreement, thus rendering the agreement voidable.

---

[4]     Although this provision appears in a statutory note, rather than as a freestanding provision of the United States Code, it is "legally binding." (*Second Street, supra*, 105 Cal.App.5th at p. 566, fn. 6.)

Martinez contends the Act applies because the parties' dispute arose when she filed the present lawsuit against Midway Venture, after the effective date of the Act. Midway Venture asserts the Act does not apply because the parties' dispute arose when Martinez initially resisted the alleged sexual harassment and the harassment persisted—events that occurred before the Act went into effect. We disagree with both parties about the specific date their dispute arose. But we agree with Martinez the dispute arose after the effective date of the Act, so the arbitration agreement is unenforceable.

"The Act does not define a 'dispute' or state when a dispute has 'arisen.' We look to general and legal dictionaries for a term's ordinary meaning. [Citation.] The Cambridge Dictionary defines a dispute as 'an argument or disagreement, especially an official one.' [Citation.] Black's Law Dictionary defines a dispute as a 'conflict or controversy, esp. one that has given rise to a particular lawsuit.' [Citation.] Merriam-Webster's Dictionary of Law states a dispute is 'an assertion of opposing views or claims: a disagreement as to rights[,] *especially*: one that is the subject of proceedings for resolution (as arbitration).'" (*Kader v. Southern California Medical Center, Inc.* (2024) 99 Cal.App.5th 214, 222 (*Kader*).)

"[T]he date that a dispute has arisen for purposes of the Act is a fact-specific inquiry in each case, but a dispute does not arise solely from the alleged sexual conduct. A dispute arises when one party asserts a right, claim, or demand, and the other side expresses disagreement or takes an adversarial posture. [Citation.] In other words, '[a] dispute cannot arise until both sides have expressed their disagreement, either through words or actions.' [Citation.] Until there is a conflict or disagreement, there is nothing to resolve in litigation." (*Kader, supra*, 99 Cal.App.5th at pp. 222–223.)

Applying these principles to the facts of the present case, we conclude the parties' dispute arose when Martinez filed a charge with the DFEH against Midway Venture on April 6, 2023. It was at this time—and no earlier—that a concrete and tangible adversarial controversy existed about whether Martinez had endured illegal sexual harassment at the hands of her putative employer and its agents. Indeed, there is no indication in the record that Midway Venture or any of its agents disputed whether the alleged conduct occurred, or the legality of the alleged conduct, at any earlier point in time. Moreover, although the inquiry is inherently fact-based, we note that numerous other courts have similarly determined that an employee's filing of charges with an executive agency can—and routinely does—serve as the date that an employee's dispute with her employer arises for purposes of the Act.[5]

As noted, Midway Venture contends the dispute arose before Martinez filed a charge with the DFEH. Midway Venture claims the dispute arose when Martinez resisted the alleged harassment and the defendants continued to harass her, which occurred before the Act went into effect. We disagree. Midway Venture conflates the date of the underlying sexual

---

[5] See *Kader, supra*, 99 Cal.App.5th at pp. 222–225 [dispute arose when employee filed complaint with DFEH]; see also *Scoggins v. Menard, Inc.* (S.D. Ohio, Aug. 19, 2024) 2024 U.S. Dist. Lexis 147638, at *17–18 [dispute arose when plaintiff filed complaint with Ohio Civil Rights Commission]; *Rosser v. Crothall Healthcare, Inc.* (E.D. Pa., Aug. 13, 2024) 2024 U.S. Dist. Lexis 144426, at *11 [dispute arose when employee dual-filed discrimination charge with Equal Employment Opportunity Commission (EEOC) and Philadelphia Fair Practices Ordinance]; *Papaconstantinou-Bauer, supra*, 2024 U.S. Dist. Lexis 47044, at *14–15 [dispute arose when employee filed discrimination charge with EEOC]; *Hodgin v. Intensive Care Consortium, Inc.* (S.D. Fla. 2023) 666 F.Supp.3d 1326, 1330 [same]; *Silverman v. DiscGenics, Inc.* (D. Utah, Mar. 13, 2013) 2023 U.S. Dist. Lexis 42753, at *6–7 [dispute arose on or before employee's filing of discrimination charge with Utah Antidiscrimination and Labor Division].

harassment with the date an adversarial disagreement *about* the sexual harassment arose. The two are not synonymous. "[A] dispute does not arise simply because the plaintiff suffers an injury; it additionally requires a disagreement or controversy." (*Kader, supra*, 99 Cal.App.5th at p. 223.)

The Act "make[s] clear that a dispute requires more than an injury. The [Act] defines a "sexual assault dispute" as "*a dispute* involving a nonconsensual act or sexual conduct," and it defines "sexual harassment dispute" as "*a dispute* relating to conduct that is alleged to constitute sexual harassment." [Citation.] If the underlying conduct alone—the sexual assault or harassment—automatically gave rise to a dispute, then the legislature's use of the word "dispute" within these two definitions would be superfluous. A "sexual assault dispute" would merely mean "a nonconsensual act or sexual conduct." And a "sexual harassment dispute" would mean "conduct that is alleged to constitute sexual harassment." This cannot be so. "[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." ' " (*Kader, supra*, 99 Cal.App.5th at pp. 223–224.)

*Kader* is instructive. In that case, an employee alleged his employer's chief medical officer sexually harassed him both before and after he executed an arbitration agreement requiring him to submit employment-related disputes to arbitration. (*Kader, supra*, 99 Cal.App.5th at pp. 218–219.) After the alleged harassment took place, the Act went into effect. (*Id.* at p. 219.) The employee then filed a complaint with the DFEH, received a right-to-sue notice, and filed a lawsuit against the employer and other defendants in court. (*Ibid.*) Although the employee complained directly to his harasser about the harassment before he filed a DFEH charge, and the harasser purportedly threatened to fire the employee if he reported it to others, the

13

*Kader* court concluded the employee did not "assert[] any right, claim, or demand prior to filing charges with the DFEH," after the Act went into effect. (*Id.* at p. 224.) According to the court, there was no dispute at any earlier point in time—despite the employee's fruitless efforts to stop the harassment as it was ongoing—because the employer did not "disagree[] with any claim asserted by [the employee] until after he filed charges with DFEH." (*Ibid.*)

A recent decision from the Eighth Circuit Court of Appeals, *Famuyide v. Chipotle Mexican Grill, Inc.* (8th Cir. 2024) 111 F.4th 895 (*Famuyide*), also supports our conclusion and undermines Midway Venture's argument that the parties' dispute arose when Martinez tried to halt the sexual harassment as it was occurring. In *Famuyide*, an employee averred that a co-worker sexually harassed her—and that she complained about the harassment to her manager—before the Act went into effect. (*Id.* at p. 897.) Before the law's effective date, the employee's legal counsel also sent two letters to the employer stating that the employee was investigating potential claims against the employer, considering a civil action against the employer, requesting that the employer preserve potentially relevant evidence, and asking the employer to answer questions about the harassment and the employer's response thereto. (*Id.* at p. 898.) Then, after the effective date of the Act, the employee filed a complaint against the employer in court. (*Ibid.*)

Even though the employee reported the sexual harassment to her manager before the Act went into effect, the *Famuyide* court concluded the parties' dispute did not arise until after the Act went into effect because, at the time of the report, the employee "had not asserted any right, claim, or demand against [the employer], and [the employer] had not registered disagreement with any position of [the employee]." (*Famuyide, supra*, 111 F.4th at p. 898.) According to the court, even the letters from the employee's

14

legal counsel did not give rise to a dispute because "[t]his sort of exploratory letter from counsel does not establish a dispute or inevitably lead to one. Sometimes a dispute ensues after this type of correspondence. But sometimes it does not, either because the client decides not to proceed further after investigation or because the communications result in an amicable resolution between the correspondents. … [The employee's] lawyers did not assert that [the employer] violated [her] rights, and they did not demand compensation or payment from the company. There was thus no conflict or controversy between the parties, and no 'dispute' that could have been submitted to arbitration" at the time the lawyers sent the letters. (*Ibid.*)

As these cases illustrate, a dispute did not arise when Martinez admonished her alleged harassers to stop harassing her, nor when the harassers continued to engage in misconduct thereafter. Although Martinez registered disapproval of the misconduct as it occurred, there is no indication that, in the course of resisting the harassment, she claimed violations of any legal statute, requested compensation from Midway Venture, or stated her unambiguous intention to file legal claims against the company or its agents. Nor is there any indication Midway Venture denied the harassing conduct prior to Martinez's filing of a charge with the DFEH. Because Martinez's filing of the DFEH charge marked the beginning of the parties' dispute, and she filed the DFEH charge *after* the Act went into effect, the trial court properly found that the Act applied to the present case.[6]

---

[6] In light of our conclusion that the dispute arose after the effective date of the Act, we do not address the separate issue of whether the Act applies because Martinez's claims accrued after the Act went into effect. (See *Filipino Accountants' Assn. v. State Bd. of Accountancy* (1984) 155 Cal.App.3d 1023, 1029–1030 [generally, "when an appellate court concludes that affirmance of the judgment is proper on certain grounds it will rest its decision on those grounds and not consider alternative grounds"].)

D. *The Arbitration Agreement was a Predispute Arbitration Agreement*

Midway Venture presents a second related argument concerning why Martinez cannot invalidate the parties' arbitration agreement for purposes of this case. Midway Venture claims the agreement is not a predispute arbitration agreement, but rather a post-dispute arbitration agreement, because Martinez executed the agreement after some of the alleged sexual harassment had already occurred. We reject this argument.

The Act defines "predispute arbitration agreement" as "any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement." (9 U.S.C. § 401.) Here, Martinez executed the arbitration agreement on September 12, 2021. As discussed, the parties' dispute did not arise until Martinez filed a charge with the DFEH on April 6, 2023. Thus, although some of the underlying sexual harassment allegedly occurred before the parties executed their agreement, the agreement was nonetheless a predispute arbitration agreement because the parties executed it before their dispute arose. (*Kader, supra*, 99 Cal.App.5th at pp. 222–224 [arbitration agreement executed after harassment occurred was predispute arbitration agreement because parties executed it before plaintiff filed DFEH charge]; *Hix v. Dave & Buster's Mgmt. Corp., Inc.* (D. Ore., Nov. 14, 2023) 2023 U.S. Dist. Lexis 234274, at *11–15 [rejecting claim that agreement must be executed before sexual harassment occurs to qualify as predispute arbitration agreement].)

Since the parties' arbitration agreement qualifies as a predispute arbitration agreement, and the parties' dispute did not arise until after the Act went into effect, the trial court correctly found the arbitration agreement was unenforceable at Martinez's election. Because the arbitration agreement

16

was invalid for purposes of the present case, the trial court properly denied Midway Venture's motion to compel arbitration.

IV

DISPOSITION

The order is affirmed.  Respondent is entitled to her appellate costs.

McCONNELL, P. J.

WE CONCUR:

IRION, J.

BUCHANAN, J.

17