Filed 7/11/25  Doe T.H. v. HB Healthcare Associates CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| DOE T.H.,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>HB HEALTHCARE ASSOCIATES LLC et al.,<br><br>　　Defendants and Appellants. | G063152<br><br>(Super. Ct. No. 30-2022-1277690)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Nathan R. Scott, Judge. Affirmed.

Call & Jensen, Julie R. Trotter, Ellen Connelly Cohen and Melinda Evans for Defendants and Appellants.

Slater Slater Schulman, James W. Lewis, Cindy K. Suh; Dadgostar Law, Hirad D. Dadgostar, Azadeh Dadgostar Gilbert; Esner, Chang, Boyer & Murphy, Shea S. Murphy and Rowena J. Dizon for Plaintiff and Respondent.

Jane Doe T.H. (plaintiff) filed a lawsuit against her former employer, defendant HB Healthcare Associates LLC, doing business as Sea Cliff Healthcare Center (Sea Cliff); Sea Cliff's passive holding company, The Ensign Group, Inc. (Ensign); and plaintiff's former supervisor, Luis Lemus (collectively, defendants). Plaintiff alleged she was sexually assaulted and harassed during her employment. Defendants moved to compel plaintiff's claims to arbitration based on the arbitration agreement she signed at the beginning of her employment with Sea Cliff, and plaintiff opposed the motion.

The trial court denied the motion on the ground the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (9 U.S.C. § 401 et seq.; the Act) renders the arbitration agreement unenforceable at plaintiff's election. For the reasons we explain, we agree and affirm.

## FACTS AND PROCEDURAL HISTORY

### I.

### THE COMPLAINT

On August 29, 2022, plaintiff initiated this action by filing a complaint asserting a claim for sexual harassment in violation of the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA) against defendants; claims for sexual assault and intentional infliction of emotional distress against Lemus; and claims for retaliation in violation of FEHA, failure to prevent harassment in violation of FEHA, negligent supervision, retaliation in violation of Labor Code section 1102.5, subdivision (b), and wrongful termination against Sea Cliff and Ensign. We summarize the allegations of the complaint underlying plaintiff's claims as follows.

On January 7, 2022, plaintiff began working for Sea Cliff and Ensign as a member of the housekeeping and laundry team at a Sea Cliff assisted living facility. From January 3, 2022, the date she was interviewed by Lemus, until March 10, 2022, Lemus "waged a campaign of unrelenting sexual harassment, sexual assaults, intimidation, aggression, and workplace bullying" against plaintiff. After her January 3, 2022, interview, Lemus texted plaintiff asking, "'When can I see you?'" and saying, "'Come by my house.'" The following day, Lemus sent plaintiff several other inappropriate and sexually explicit text messages. He also stated he put in a good word for her with Sea Cliff and Ensign. Plaintiff responded by texting she was married and told Lemus to stop sending her such messages.

Notwithstanding Lemus's inappropriate messages, plaintiff accepted Sea Cliff and Ensign's employment offer because she was "in serious need of a job." Plaintiff alleged that after she started working for defendants, Lemus continued to make sexually inappropriate comments to her, groped her in a sexual manner on several occasions, and "otherwise sexually assaulted her while she was working, including forcing her to engage in oral sex." She alleged Lemus's frequent inappropriate sexual comments to her were made at work in front of other supervisors and employees. She alleged his frequent sexual comments were "widely known among [p]laintiff's coworkers, and other supervisors, including persons in human resources." She alleged "another employee that was supervised by Lemus was also sexually harassed by Lemus prior to and during the time that plaintiff was sexually harassed and sexually assaulted by Lemus."

Plaintiff "consistently rebuffed and objected to Lemus'[s] sexual advances and harassment." In response, Lemus subjected plaintiff "to unrelenting retaliatory and hostile conduct by giving plaintiff additional

3

work that was assigned to other employees so that she would quit or be so exhausted that she could not keep up with the workload." Lemus changed plaintiff's schedule so that she did not have consecutive days off and took her off "the work schedule on days she was normally scheduled to work in retaliation for her unwillingness to submit to his sexual advances, sexual harassment and sexual assaults."

On February 18, 2022, plaintiff reported to human resources that Lemus "was changing her schedule around so that she did not have consecutive days off and randomly changing her schedule because she would not have sex with him." Ten days later, a human resources employee took a statement from plaintiff. Plaintiff was asked to provide her text message exchanges with Lemus; plaintiff complied the same day. "For several days thereafter, human resources continued to request that plaintiff send the text messages again." Plaintiff resent the text messages on March 3, 2022.

Plaintiff alleged: "Human resources continued to contact plaintiff requesting to interview her again and requesting that she send the text messages again. This was done in an effort to harass and retaliate against plaintiff for reporting Lemus'[s] sexual harassment and sexual assaults of her. Plaintiff was harassed and intimidated by human resources daily until March 10, 2022, at which time her employment was terminated[] [¶] . . . in retaliation for opposing, complaining about and reporting . . . Lemus's unlawful conduct."

Plaintiff also alleged she was subjected to "verbal insults, humiliation, and workplace bullying by other Ensign and Sea Cliff [e]mployees and/or supervisors." Despite complaining "to members of [h]uman [r]esources and/or other executives," Sea Cliff and Ensign did not address her complaints or otherwise take corrective action and instead

4

retaliated against plaintiff by terminating her employment on March 10, 2022.

## II.

### DEFENDANTS' MOTION TO COMPEL ARBITRATION

Defendants filed a motion to compel all of plaintiff's claims to arbitration. Defendants sought to enforce the arbitration agreement plaintiff signed at the beginning of her employment in which she agreed "to resolve by final and binding arbitration any and all claims or controversies . . . in any way arising out of, relating to or associated with [her] employment with the Company or any of its parents, affiliates, subsidiaries, or the termination of such employment."

As relevant to the issue presented in this appeal, namely the applicability of the Act to preclude enforcement of the parties' arbitration agreement, defendants produced the following evidence in support of their motion. On February 25, 2022, Sea Cliff's payroll representative Jaycie Bruno informed Ensign's[1] human resources team member Elizabeth DeSousa that plaintiff had made a complaint about maintenance supervisor Lemus. DeSousa immediately opened an investigation and recommended Sea Cliff immediately suspend Lemus; effective that same day, Sea Cliff suspended Lemus pending investigation of plaintiff's complaint.

DeSousa interviewed plaintiff on February 28, 2022, and again on March 3, 2022. As part of the interview process, plaintiff provided text messages she alleged were sent to her by Lemus, the latest of which had been

---

[1] Defendants produced evidence Ensign was a holding company and sole shareholder of the portfolio company that owned Sea Cliff. As a passive holding company, Ensign had no direct operating assets, revenue, or employees and had not had "any involvement in the day-to-day operations of its subsidiaries."

sent on February 25, 2022. Lemus submitted a declaration in support of the motion to compel arbitration stating he did not work with or communicate with plaintiff after he was placed on suspension on February 25, 2022, and he did not return to the facility "unless specifically requested to return for an interview or other investigative purpose."

DeSousa concluded all incidents of misconduct occurred before February 25, 2022, and thus before Lemus's suspension. Plaintiff refused to provide the phone number attached to the text messages, information which DeSousa stated, would enable her to confirm the messages came from Lemus.

After interviewing others at the facility who failed to corroborate plaintiff's allegations, DeSousa determined the claims to be unsubstantiated. Plaintiff tendered her resignation, effective March 10, 2022. The last day plaintiff worked at Sea Cliff was March 7, 2022.

Lemus's suspension was lifted and Lemus was permitted to return to work on March 11, 2022.

III.

PLAINTIFF'S OPPOSITION AND DEFENDANT'S REPLY

Plaintiff filed an opposition to the motion to compel arbitration in which she argued, inter alia, the Act applied to render the subject arbitration agreement unenforceable. She argued she suffered harassment and retaliation until March 10, 2022, and thus after the Act became effective on March 3, 2022.

In support of her opposition, plaintiff submitted her declaration in which she stated she first reported she had been sexually assaulted and sexually harassed by Lemus on February 18, 2022, and provided additional information about those incidents on February 25, 2022. She stated she was interviewed by DeSousa on February 28, 2022, and sent her the text message

6

exchanges with Lemus that same day. On March 1, 2022, DeSousa asked plaintiff to resend her the text messages.

On March 2, 2022, plaintiff showed up ready to work for her shift as scheduled "but someone else was already there performing [her] job and [she] was told to go home." On March 3, 2022, DeSousa questioned plaintiff again and asked plaintiff to resend the same text message exchanges to DeSousa. Plaintiff felt she was being interrogated and blamed for Lemus's sexual assaults and sexual harassment. She believed DeSousa's questions and requests were not done in order to complete the investigation but to harass, intimidate, and retaliate against plaintiff for reporting the incidents. On March 3, 2022, plaintiff resent the text message exchanges with Lemus to DeSousa.

In her declaration, plaintiff stated, "On March 4, 2022[,] I received a sexual text message that I am informed and believe was from someone affiliated with the defendants. I believe this text message was an attempt to intimidate, harass[,] and retaliate against me." On March 8, 2022, plaintiff was "contacted by another employee of the defendants . . . who also wanted to ask her questions about the incidents." On March 10, plaintiff told defendants she felt she "was being asked the same questions from defendants over and over again and it was harassing[,] and [she] was being forced to stop working for the defendants." Defendants' reply included the submission of evidentiary objections to certain portions of plaintiff's declaration.

IV.

THE TRIAL COURT'S DENIAL OF THE MOTION TO COMPEL

After issuing a tentative ruling denying the motion to compel arbitration, the trial court held a hearing, entertained argument, and took the matter under submission. The court thereafter issued a minute order

7

adopting the reasoning of its tentative ruling and denying the motion to compel on the ground the Act precluded forced arbitration of plaintiff's claims. The court issued a separate order ruling on each of defendants' evidentiary objections to plaintiff's declaration filed in opposition to the motion to compel arbitration.

Defendants appealed.

## DISCUSSION

### I.

### GENERAL LEGAL PRINCIPLES AND STANDARD OF REVIEW

"'Both the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) and the FAA [Federal Arbitration Act] (9 U.S.C. § 1 et seq.) recognize ""arbitration as a speedy and relatively inexpensive means of dispute resolution"' and are intended "'to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.""'"" (*Franco v. Greystone Ridge Condominium* (2019) 39 Cal.App.5th 221, 226–227.)

"Pursuant to Code of Civil Procedure section 1281.2, '[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists. . . .' [¶] "'The trial court may resolve motions to compel arbitration in summary proceedings, in which . . . 'the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination.'"" [Citation.]

The party seeking to compel arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense." (*Doe v. Second Street Corp.* (2024) 105 Cal.App.5th 552, 563–564.)

"""There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed.""" (*Franco v. Greystone Ridge Condominium, supra*, 39 Cal.App.5th at p. 227.) "We review matters of statutory interpretation de novo." (*Borden v. Stiles* (2023) 92 Cal.App.5th 337, 345.)

## II.

## THE ACT

The Act, signed by President Joseph R. Biden in March 2022, "represent[ed] the first major amendment of the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) since its inception nearly 100 years ago. This legislation, having bipartisan support, voids predispute arbitration clauses in cases . . . involving sexual harassment allegations." (*Murrey v. Superior Court* (2023) 87 Cal.App.5th 1223, 1230 (*Murrey*).)

Section 402(a) of title 9 of the United States Code provides in relevant part: "[A]t the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute . . . , no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment

9

dispute." In addition, any "issue as to whether [the Act] applies with respect to a dispute shall be determined under Federal law." (9 U.S.C. § 402(b).)

The Act includes definitions for key terms. As relevant to the instant case, "[t]he term 'predispute arbitration agreement' means any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement" (9 U.S.C. § 401(1)); "[t]he term 'sexual assault dispute' means a dispute involving a nonconsensual sexual act or sexual contact" (9 U.S.C. § 401(3)); and "[t]he term 'sexual harassment dispute' means a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law" (9 U.S.C. § 401(4)).

### III.

#### THE ACT APPLIES TO PLAINTIFF'S CLAIMS

Here, defendants do not contest the instant action is an action filed under state law which relates to a sexual assault dispute and/or a sexual harassment dispute within the meaning of the Act. Instead, defendants contend the alleged instances of sexual assault and sexual harassment occurred no later than February 25, 2022, and thus before the Act's March 3, 2022, effective date, rendering the Act inapplicable to this case.

As set forth in a statutory note to the Act, the Act has prospective effect, applying "to any dispute or claim that arises or accrues on or after [its] date of enactment." (Pub.L. No. 117–90, § 3 (Mar. 3, 2022) 136 Stat. 28, reprinted in notes foll. 9 U.S.C. § 401; see *Kader v. Southern California Medical Center, Inc.* (2024) 99 Cal.App.5th 214, 222 (*Kader*) ["All provisions enacted by Congress, including a provision codified as a statutory note, must be given equal weight regardless of their placement by the codifier. [Citation.] 'The [c]ourt must read [9 U.S.C.] § 402(a) in conjunction with the statutory

10

note, as both are binding law'"].) The Act was signed into law on March 3, 2022. (See *Kader, supra*, at pp. 222, 224.)

"Courts have interpreted [the language of the statutory note] 'to provide two distinct calculations, either of which is sufficient to trigger the [Act]: when the "dispute[] . . . arise[s]" and when the "claim[] . . . accrue[s]."'" (*Doe v. Second Street Corp.* (2024) 105 Cal.App.5th 552, 566.) The Act therefore applies—and renders an arbitration agreement voidable at the election of the plaintiff in a case relating to a sexual assault dispute or sexual harassment dispute—if either the plaintiff's claim accrues, or the parties' dispute arises, on or after the Act's effective date.

As explained in *Kader, supra*, 99 Cal.App.5th at page 222: "The Act does not define a 'dispute' or state when a dispute has 'arisen.' We look to general and legal dictionaries for a term's ordinary meaning. [Citation.] The Cambridge Dictionary defines a dispute as 'an argument or disagreement, especially an official one.' [Citation.] Black's Law Dictionary defines a dispute as a 'conflict or controversy, [especially] one that has given rise to a particular lawsuit.' [Citation.] Merriam-Webster's Dictionary of Law states a dispute is 'an assertion of opposing views or claims: a disagreement as to rights[,] [¶] *especially*: one that is the subject of proceedings for resolution (as arbitration).'"

The appellate court in *Kader* further explained: "[T]he date that a dispute has arisen for purposes of the Act is a fact-specific inquiry in each case, but a dispute does not arise solely from the alleged sexual conduct. A dispute arises when one party asserts a right, claim, or demand, and the other side expresses disagreement or takes an adversarial posture. [Citation.] In other words, '[a] dispute cannot arise until both sides have expressed their disagreement, either through words or actions.' [Citation.] Until there is a

11

conflict or disagreement, there is nothing to resolve in litigation." (*Kader, supra,* 99 Cal.App.5th at pp. 222–223; see also *Hodgin v. Intensive Care Consortium, Inc.* (S.D.Fla. 2023) 666 F.Supp.3d 1326, 1329–1330 ["[p]laintiff's dispute arose when she filed [c]harges of [d]iscrimination against her employer with the [Equal Employment Opportunity Commission]" because by then she was "in an adversarial posture with her employer in a forum with the potential to resolve the claim"]; *Castillo v. Altice USA, Inc.* (S.D.N.Y. 2023) 698 F. Supp.3d 652, 658 [at the latest, a dispute arose when plaintiff "complained of sexual harassment [to her employer] to no avail and was thereafter subjected to retaliation"].)

"'[T]he [Act] also make[s] clear that a dispute requires more than an injury. The [Act] defines a "sexual assault dispute" as "a *dispute* involving a nonconsensual act or sexual conduct," and it defines "sexual harassment dispute" as "a *dispute* relating to conduct that is alleged to constitute sexual harassment." [Citation.] If the underlying conduct alone—the sexual assault or harassment—automatically gave rise to a dispute, then the [L]egislature's use of the word "dispute" within these two definitions would be superfluous. A "sexual assault dispute" would merely mean "a nonconsensual act or sexual conduct." And a "sexual harassment dispute" would mean "conduct that is alleged to constitute sexual harassment." This cannot be so. "[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."'" (*Kader, supra,* 99 Cal.App.5th at pp. 223–224; see *Famuyide v. Chipotle Mexican Grill, Inc.* (8th Cir. 2024) 111 F.4th 895, 898 [although employee reported sexual harassment to manager before the Act's effective date, court concluded parties' dispute did not arise until after the Act went into effect because by

12

then the employer had not yet "registered disagreement with any position of [the employee]"].)

Applying these principles to the instant case, we conclude the parties' dispute arose no earlier than after DeSousa, on behalf of defendants, completed her investigation and concluded plaintiff's claims were unsubstantiated, resulting in the lifting of Lemus's suspension effective March 12, 2022. It was at this time that a concrete and tangible controversy existed about whether plaintiff had suffered sexual assault and/or sexual harassment during her employment. (*Kader, supra*, 99 Cal.App.5th at p. 223 ["[A] dispute does not arise simply because the plaintiff suffers an injury; it additionally requires a disagreement or controversy"].) Consequently, the trial court did not err by finding the Act applicable and denying the motion to compel arbitration in its entirety. (*Liu v. Miniso Depot CA, Inc.* (2024) 105 Cal.App.5th 791, 796 ["the plain language of the [Act] exempts a plaintiff's entire case from arbitration where the plaintiff asserts at least one sexual harassment claim subject to the [A]ct"].)

We therefore do not need to address whether the trial court erred by overruling defendants' evidentiary objections to plaintiff's declaration regarding a post-Act effective date sexual text, or by failing to hold an evidentiary hearing regarding that text.

13

## DISPOSITION

The order is affirmed. Respondent to recover costs on appeal.


MOTOIKE, J.

WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.