# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-3201

_____

Eniola Famuyide,

*Plaintiff - Appellee,*

v.

Chipotle Mexican Grill, Inc.; Chipotle Services, LLC,

*Defendants - Appellants.*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: May 8, 2024
Filed: August 5, 2024

_____

Before COLLOTON, Chief Judge, SHEPHERD and STRAS, Circuit Judges.

_____

COLLOTON, Chief Judge.

This appeal calls for a fact-specific determination on applicability of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021. The district court[1] determined that the Act applied to the dispute in this case, and thus denied a motion to compel arbitration. We affirm.

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

The federal law at issue allows a person alleging conduct constituting sexual assault or sexual harassment to avoid enforcement of a predispute arbitration agreement. The law applies when a dispute or claim arises or accrues on or after the law's enactment date of March 3, 2022.[2]

Eniola Famuyide brought this action against Chipotle Mexican Grill and its subsidiary on April 20, 2023. The complaint alleges several claims under Minnesota law arising from sexual assault and sexual harassment in the workplace. Chipotle moved to compel arbitration based on an employment agreement with Famuyide. The district court determined, however, that a dispute between Famuyide and Chipotle did not arise until after March 3, 2022, so any arbitration agreement was not valid or enforceable at Famuyide's election. Chipotle argues on appeal that a dispute arose before the enactment date, and that the court should have compelled arbitration.

The lawsuit stems from Famuyide's employment with Chipotle. Her complaint alleges that a co-worker began to sexually harass her soon after she commenced employment in May 2021. In November 2021, the co-worker sexually assaulted Famuyide in the restroom of the restaurant where they worked. Famuyide reported the assault to her manager. The complaint alleges that the store manager initially wanted to fire both Famuyide and the co-worker, but that another manager saved her job. Famuyide then took a leave of absence from work because she was emotionally unable to perform her duties.

---

[2]The Act provides that "at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, Pub. L. No. 117-90, § 2(a), 136 Stat. 26, 27 (codified at 9 U.S.C. § 402(a)). The Act states that it "shall apply with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act." *Id.* § 3.

The complaint explains that on February 15, 2022, during Famuyide's leave of absence, she was unable to access the company's online employee portal and thought she had been terminated. Chipotle notified her on March 1, however, that the termination had been rescinded. The company explained that she had been terminated "in error" due to a mistake in how her leave of absence was entered into a data management system.

Famuyide's complaint filed in April 2023 alleges that Chipotle engaged in unfair employment practices under Minnesota law (hostile work environment, reprisal, and retaliation), and that the company is vicariously liable for assault and battery and for intentional infliction of emotional distress. The complaint further asserts that Chipotle negligently hired, retained, and supervised the co-worker, and that the company failed to provide a safe work environment. Famuyide filed an earlier complaint against Chipotle in Minnesota state court raising the same claims on July 26, 2022. Famuyide voluntarily dismissed the state-court action and participated in an unsuccessful mediation before filing this federal action.

The present lawsuit involves a sexual assault dispute and a sexual harassment dispute within the meaning of the federal statute on arbitration of such disputes. *See* 9 U.S.C. § 401(3)-(4). Therefore, Famuyide may avoid a predispute arbitration agreement if the disputes involved in this case arose on or after March 3, 2022. The term "dispute" is not defined in the statute, so we apply the ordinary meaning of the term. In a legal context like this one, a dispute is a "conflict or controversy, esp. one that has given rise to a particular lawsuit." *Black's Law Dictionary* 593 (11th ed. 2019).

Although the state-court lawsuit was not filed until July 2022, Chipotle maintains that a "dispute" arose before March 3, 2022, and should be submitted to arbitration. Chipotle's principal argument is that a dispute arose on November 23, 2021, when Famuyide's co-worker sexually assaulted her in the restroom at the restaurant. The company maintains that a "dispute" necessarily arises when the

underlying conduct occurs. At that point, however, Famuyide had not asserted any right, claim, or demand against Chipotle, and Chipotle had not registered disagreement with any position of Famuyide's. There was no conflict or controversy between company and employee as of November 23, 2021, and no "dispute" between the parties that could have been submitted to arbitration at that time.

Chipotle next asserts that a dispute arose when Famuyide's counsel sent two letters to the company in February 2022. On February 2, Famuyide's lawyers wrote that they were "investigating potential claims" and asked Chipotle to preserve all information that was potentially relevant to the matter. The lawyers also requested a copy of Famuyide's personnel record. On February 21, Famuyide's lawyers sent a second letter to Chipotle. The lawyers said that Famuyide was "considering pursuing a civil action against Chipotle" with various claims, and asked Chipotle to respond by March 1 with answers to several questions regarding the sexual assault and the company's response to the incident. The letter also inquired whether Chipotle "is interested in discussing an out-of-court resolution with Ms. Famuyide of her claims."

This sort of exploratory letter from counsel does not establish a dispute or inevitably lead to one. Sometimes a dispute ensues after this type of correspondence. But sometimes it does not, either because the client decides not to proceed further after investigation or because the communications result in an amicable resolution between the correspondents. As of February 2022, Famuyide was still "investigating potential claims" and "considering pursuing a civil action." Her lawyers did not assert that Chipotle violated Famuyide's rights, and they did not demand compensation or payment from the company. There was thus no conflict or controversy between the parties, and no "dispute" that could have been submitted to arbitration in February 2022.

Chipotle's argument of last resort relies on a letter dated March 1, 2022, that the company's counsel sent to Famuyide's lawyers. Chipotle, however, did not

submit this letter as evidence before the district court entered its order, and the company acknowledges that the letter is not part of the record on appeal. *See* Fed. R. App. P. 10(a); *Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990, 994 (8th Cir. 2003). Famuyide's complaint recounts only that Chipotle communicated to her on March 1 that she was terminated "in error" during February due to a data-entry mistake.

Chipotle asks this court to include the March 1 letter in the record on appeal and suggests that the Due Process Clause requires us to consider this document. We generally refuse to consider evidence that was not presented to the district court, and the "narrow, rarely exercised exception" to that rule is not applicable here. *See Love v. United States*, 949 F.3d 406, 411-12 (8th Cir. 2020). Chipotle had ample opportunity to file the March 1 letter in the district court, including with supplemental briefing after a hearing on this precise matter, but chose not to do so. Neither the interests of justice nor the guarantee of due process requires that Chipotle receive a new opportunity to develop the record after the district court ruled.

The order of the district court is affirmed.

_____