**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2961
_____

MICHELE A. CORNELIUS,
Appellant

v.

CVS PHARMACY INC.; NEW JERSEY CVS
PHARMACY, L.L.C.; SHARDUL PATEL
_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 2:23-cv-01858)
District Judge:  Honorable Susan D. Wigenton
_____

Argued October 30, 2024
_____

Before:  CHAGARES, Chief Judge, PORTER and CHUNG,
Circuit Judges

(Filed: April 2, 2025)

Alex G. Leone **[ARGUED]**
P.O. Box 1274
Maplewood, NJ 07040

       <u>Counsel for Appellant</u>

James Driscoll-MacEachron **[ARGUED]**
Equal Employment Opportunity Commission
Office of General Counsel
131 M Street NE
Washington, DC 20507

       <u>Counsel for Amicus Equal Employment Opportunity
Commission</u>

Rohan Shetty
Public Justice
1620 L Street NW
Suite 630
Washington, DC 20036

       <u>Counsel for Amicus Public Justice</u>

Kristine G. Derewicz **[ARGUED]**
Littler Mendelson
1601 Cherry Street
Three Parkway, Suite 1400
Philadelphia, PA 19102

Marcy A. Gilroy
Littler Mendelson
1085 Raymond Boulevard
One Newark Center, 8th Floor

Newark, NJ 07102

Heather A. Pierce
Littler Mendelson
One Financial Plaza
Suite 2205
Providence, RI 02903

Tara Porterfield
Littler Mendelson
100 Congress Avenue
Suite 1400
Austin, TX 78701

      <u>Counsel for Appellees</u>


Michael E. Kenneally **[ARGUED]**
Morgan Lewis & Bockius
1111 Pennsylvania Avenue NW
Suite 800 North
Washington, DC 20004

      <u>Counsel for Amici Retail Litigation Center, Inc. and Chamber of Commerce of the United States of America</u>

_____

OPINION OF THE COURT
_____

CHUNG, Circuit Judge.

Michele Cornelius sued CVS, her former employer, and Shardul Patel, her former supervisor, for creating a hostile work environment. CVS moved to compel Cornelius to arbitrate and to dismiss or stay her Complaint. The District Court granted the motion to compel arbitration and dismissed the complaint because it concluded that Cornelius's claims were not shielded from arbitration under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA") as her hostile work environment claim was not a "sexual harassment dispute." The District Court also ruled that Cornelius and CVS entered into a valid arbitration agreement and that the agreement was not unconscionable.

We agree with the District Court that the EFAA does not cover Cornelius's claims, but we reach that conclusion on different grounds. We further conclude that the District Court abused its discretion by failing to consider whether discovery was necessary before deciding that Cornelius and CVS reached a valid agreement to arbitrate.

We will therefore affirm in part, vacate judgment, and remand to the District Court.

I.    BACKGROUND[1]

---

[1]    We derive the following facts from Cornelius's Complaint unless otherwise noted. CVS's motion to dismiss was predicated on the arbitration agreement and did not challenge the sufficiency of Cornelius's Complaint. At this stage, we take the factual allegations set forth in her Complaint as true. *See Coon v. Cnty. of Lebanon*, 111 F.4th 273, 275 (3d

4

## A. Factual History

Michele Cornelius began working for CVS as a cashier in 1982. Over the next forty years, Cornelius "built an excellent reputation for operational discipline" and was eventually promoted Store Manager of CVS Pharmacy store 2724 in June 2017 ("the Store"). App. at 6.

Beginning in 2018, Cornelius's supervisor, Shardul Patel, "began to target [Cornelius] with severe and pervasive negative treatment, intentionally because she is a woman." *Id.* Patel unfairly denied her promotions and pay increases, favored her male employees and counterparts, "abus[ed] [her] with rude and unnecessary text messages," overworked her, and "undermin[ed]" her relationship with Store employees. App. at 6-7.

Cornelius raised concerns about her treatment with CVS in April 2019 during a meeting with Patel's supervisor, Robert Brauer. At the meeting, she informed Brauer of Patel's conduct toward her. Brauer, however, "simply dismissed" her complaints and, to her knowledge, "neither [] Brauer, nor anyone at CVS, took any action against" Patel. App. at 10. Cornelius thereafter submitted many complaints to CVS, at least six in writing, regarding Patel's conduct between September 2019 and June 2020. CVS, according to Cornelius, "always arbitrarily and sexistly sided with [] Patel, dismiss[ed] [Cornelius's] complaints of discrimination, and utterly fail[ed] to remedy" Patel's conduct. App. at 11.

---

Cir. 2024) ("On [a] motion to dismiss, we take the complaint's factual allegations as true.").

5

Cornelius submitted two resignation notices to Patel in October 2021, which he did not respond to. Patel fired Cornelius on November 4, 2021.

**B.      The Arbitration Agreement**[2]

In 2014, CVS introduced its Arbitration of Workplace Legal Disputes policy ("Arbitration Policy"). Under the Arbitration Policy, employees are informed that all "Covered Claims" will be arbitrated. App. at 23. The Arbitration Policy further provides that "[e]mployees accept this Policy by continuing their employment after becoming aware of the Policy." *Id.* The Arbitration Policy does not describe how an employee can opt out or explicitly state that employees will forfeit their right to a trial.

Employees learned of the Arbitration Policy through a PowerPoint training course ("Training Course"). App. at 18. The third slide of the Training Course contains a hyperlink to the CVS Health Colleague Guide to Arbitration ("Policy Guide"). The Policy Guide contains a full copy of the Arbitration Policy and explains how employees can accept the terms of the Arbitration Policy and how to opt out. After reviewing the Policy Guide, an employee must continue through the rest of the slides and "acknowledge[e]" that, among other things: the employee has "carefully read" the Arbitration Policy and "understand[s] that it applies to [the employee]"; the employee has "the opportunity, for a limited

---

[2]      Cornelius did not reference or include the Arbitration Policy in her Complaint. We derive information about the Arbitration Policy from CVS's motion to compel arbitration and its accompanying documents, including a declaration from Robert Bailey, Director of Talent Management at CVS.

6

time only, to opt out of the Policy"; and that to opt out, the employee must send a written and signed letter to a specific address. App. at 20-21, 42.

Cornelius completed the Training Course on October 8, 2014.

## C. Procedural History

On August 22, 2022, Cornelius filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received her right-to-sue letter on February 15, 2023. Cornelius filed her Complaint in the District of New Jersey on April 3, 2023. On May 23, 2023, CVS moved to compel arbitration and dismiss or stay.

The District Court granted CVS's motion. It concluded that Cornelius could not avoid arbitration under the EFAA because her claims did not constitute a "sexual harassment dispute." It further held that the parties voluntarily entered into a valid and enforceable agreement to arbitrate and rejected Cornelius's unconscionability claim. Cornelius timely appealed.

## II. DISCUSSION[3]

Cornelius primarily raises two issues on appeal. She argues that the District Court erred by (1) concluding that the

---

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291.

7

EFAA does not shield her claims from arbitration[4] and (2) concluding that she entered into an agreement to arbitrate without permitting discovery on the issue, despite looking beyond the pleadings in considering the motion to dismiss.

We conclude that the EFAA does not apply to Cornelius's claims and will affirm as to this issue. We will nonetheless remand as the District Court applied a Rule 56

---

[4]     Cornelius also argues that the District Court erroneously held that the Arbitration Policy (and accompanying documents) was not unconscionable. We do not reach that issue here. *See infra* note 21.

Cornelius further argues that the District Court erred in dismissing, rather than staying, the case after it compelled arbitration. The Supreme Court has made clear that Section 3 of the FAA requires that, "when a dispute is subject to arbitration, the court 'shall on application of one of the parties stay the trial of the action until [the] arbitration' has concluded." *Smith v. Spizzirri*, 601 U.S. 472, 473 (2024) (quoting 9 U.S.C. § 3). The defendants moved to dismiss, or in the alternative to stay, the case. Accordingly, if the District Court determines that Cornelius's claims are subject to arbitration, it must stay the case. *See, e.g.*, *Southward v. Newcomb Oil Co., LLC*, 7 F.4th 451, 453 (6th Cir. 2021) (treating a "motion to dismiss, or in the alternative stay" as a request to stay "because the FAA does not provide for dismissal as a remedy"); *Herra v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 711 (9th Cir. 2024) (holding that *Spizzirri* requires courts to stay a case sent to arbitration where the defendants request to "dismiss or, in the alternative, stay the action").

8

summary judgment standard, instead of the motion to dismiss standard, without considering whether discovery on arbitrability was warranted.

### A. The EFAA Does Not Shield Cornelius's Claims from Arbitration[5]

In general, the Federal Arbitration Act ("FAA") requires courts to put arbitration agreements "on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).[6] Agreements to arbitrate are thus as "valid, irrevocable, and enforceable" as any other contract. 9 U.S.C. § 2.

Enacted on March 3, 2022, "[t]he EFAA is codified directly into the FAA and limits the scope of this broad mandate to enforce arbitration agreements." *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 84 (2d Cir. 2024). "[T]he EFAA renders arbitration agreements invalid and unenforceable, at the election of the complainant, in sexual assault and sexual harassment cases." *Id.* at 77. The EFAA has two components: a substantive component and a timing component. We address the latter and conclude that the EFAA

---

[5] We review questions of statutory interpretation de novo. *Doe I v. Scalia*, 58 F.4th 708, 714 (3d Cir. 2023).

[6] The EFAA specifies that courts, rather than arbitrators, shall determine whether it applies to a particular arbitration agreement. 9 U.S.C. § 402(b) ("The applicability of this chapter to an agreement to arbitrate and the validity and enforceability of an agreement to which this chapter applies shall be determined by a court, rather than an arbitrator[.]").

does not apply to Cornelius's claims because her dispute with CVS arose prior to the effective date of the Act.[7]

The EFAA "shall apply with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act," March 3, 2022. Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, Pub. L. 117-90, § 3, 136 Stat. 26, 28.[8] The parties break this language down into two separate timing inquiries: (1) when a "dispute…arises"; and (2) when a "claim…accrues." *Id.* We adopt that organizational approach here.

Cornelius concedes that her "claim accrued" prior to her separation from CVS on November 4, 2021, well before the

---

[7] The District Court declined to address the EFAA's timing component, holding instead that Cornelius's claims did not constitute a "sexual harassment dispute" within the meaning of the EFAA. Because "[w]e exercise plenary review of a district court's order granting a motion to dismiss," *Hassen v. Government of Virgin Islands*, 861 F.3d 108, 114 (3d Cir. 2017), and because CVS's timing argument was preserved and meritorious, we address only whether Cornelius's dispute arose prior to the effective date of the Act.

[8] This language is contained in a "statutory note" and is not reflected in the published version of the U.S. Code. Statutory notes are congressionally enacted and constitute binding law. *Olivieri*, 112 F.4th at 84 n.4 ("It makes no legal difference that this provision is codified in a statutory note, not the main body, of the United States Code."); *Ruiz-Perez v. Garland*, 49 F.4th 972, 975 n.1 (5th Cir. 2022) ("Statutory notes are binding law.").

10

effective date of the EFAA. Accordingly, the EFAA shields Cornelius's claims from arbitration only if her dispute arose on or after March 3, 2022.

The parties offer two competing readings of what it means for a "dispute" to "arise" under the Act. We are not persuaded to adopt either interpretation.

### 1. "Dispute" is not Equivalent to "Injury"

We begin and end with the text. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014). We give "dispute" its ordinary meaning, since there is no statutory definition. *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 302 (3d Cir. 2011). "We may refer to legal and general dictionaries to ascertain the ordinary meaning of" an undefined statutory term. *United States v. Poulson*, 871 F.3d 261, 269 n.7 (3d Cir. 2017). Black's Law Dictionary defines "dispute" as a "conflict or controversy, esp[ecially] one that has given rise to a particular lawsuit." *Dispute*, BLACK'S LAW DICTIONARY (11th ed. 2019). The Oxford English Dictionary defines "dispute" as "[t]he act of disputing or arguing against; active verbal contention, controversy, debate." *Dispute*, Oxford English Dictionary (3d ed. 2016). In short, giving the word its ordinary meaning, a "dispute" requires some aspect of opposition or disagreement.

CVS argues though that a dispute arises "when the conduct…occurs." CVS Br. at 14-15 (internal quotations omitted). "A claim necessitates an underlying dispute. In this way, a dispute sparks the potential for a later claim and is, in a sense, the inception of a cause of action." *Id.* (internal quotations omitted). Under CVS's interpretation, the dispute

11

arose, at the latest, when Cornelius was fired on November 4, 2021, because that is when "the alleged conduct that gave rise to the claimed sexual harassment…ended." *Id.* at 16. In other words, CVS effectively equates "dispute" with injury. But "injury" lacks the essential quality of disagreement that the term "dispute" signifies. *Compare Dispute*, BLACK'S LAW DICTIONARY (11th ed. 2019) *with Injury*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "injury" as "[t]he violation of another's legal right, for which the law provides a remedy; a wrong or injustice").

The Eighth Circuit rejected a similar attempt to reduce "dispute" to "injury" in interpreting the EFAA. *See Famuyide v. Chipotle Mexican Grill, Inc.*, 111 F.4th 895, 898 (8th Cir. 2024). In that case, Chipotle asserted that "a 'dispute' necessarily arises when the underlying conduct occurs" and argued that a dispute arose in that case "when [the plaintiff's] co-worker sexually assaulted her in the restroom at the restaurant." *Id.* The Court rejected that view because, at the time of the sexual assault, the plaintiff "had not asserted any right, claim, or demand against Chipotle, and Chipotle had not registered disagreement with any position of [the plaintiff's]." *Id.* We agree with the Eighth Circuit and decline to apply such an irregular definition to "dispute." The text of the EFAA uses the word "dispute," and the ordinary meaning of that word involves some opposition or disagreement between the parties.

### 2. A Dispute Does Not Arise Only at the Filing of an External Complaint

Cornelius and amicus Public Justice advance a different interpretation of when a "dispute…arises[.]" 9 U.S.C. § 401(a). Unlike CVS, they acknowledge that an essential component of

12

a "dispute" is the registration of disagreement. *See* Pub. Just. Br. at 12 ("[A] dispute comes into being when a person asserts a right, claim, or demand and is met with disagreement on the other side." (internal quotations omitted)). Public Justice argues that such a dispute arises "when a plaintiff submits an external complaint alleging employer liability," such as through an EEOC charge or by filing a complaint in district court. Pub. Just. Br. at 12; *see also* Br. at 26 ("[T]he instant dispute arose when [Cornelius] filed a charge with the EEOC on August 2, 2022 (or timely filed this lawsuit thereafter)." (emphasis omitted)). Cornelius, on the other hand, argues that the statutory phrase "*any* dispute," Pub. L. 117-90, § 3, 136 Stat. 26, 28 (emphasis added), signifies that "disputes are possible at multiple points in sexual harassment matters." Reply at 5, 7-8. She asserts that "the most significant and obviously identifiable dispute occur[s] upon the filing of" an external complaint. *Id.* Under this logic, her August 2022 EEOC charge falls within the EFAA's broad inclusion of "*any* dispute" because it created *a* dispute and is, therefore, a "dispute" that "arose" after March 3, 2022. Accordingly, Public Justice and Cornelius argue that the EFAA can be applied here because at least one dispute "arose when [] Cornelius filed a charge of discrimination with the EEOC in August 2022." *Id.* at 13. Neither Public Justice's overly narrow, nor CVS's overly broad, interpretation of when a "dispute…arises" is persuasive.

Public Justice's interpretation is an unnatural reading of the text. There is no compelling reason to limit the term "dispute" to the filing of an "external complaint alleging employer liability." *Id.* at 12. That reading would result in excluding many conflicts that we could call "disputes" under its ordinary meaning, and Public Justice offers no good reason

13

to do so.

Perhaps recognizing this problem, Cornelius posits that "disputes are possible at multiple points in sexual harassment matters" (although she maintains that "the most significant and obviously identifiable dispute occur[s] upon the filing of" an external complaint). Reply at 5. In other words, an ongoing disagreement is a series of separate disputes. This approach undersells the importance of the statutory term "arise" and requires Cornelius to maintain that there cannot be, or was not here, an ongoing "dispute." As described in more detail below, that is a difficult position to hold: Cornelius submitted over a dozen internal complaints about Patel's conduct, all of which CVS denied. It is much more natural—at least in this case—to understand Cornelius's EEOC charge as one of the later events in an ongoing dispute, not as a new dispute "arising" at that time. We therefore reject Cornelius's and Public Justice's interpretations of "dispute…arises." 9 U.S.C. § 401(a).

In our view, a "dispute…arises" when an employee registers disagreement—through either an internal complaint, external complaint, or otherwise—with his or her employer, and the employer expressly or constructively opposes that position. *See Famuyide*, 111 F.4th at 898 (noting that a dispute had not arisen where the plaintiff "had not asserted any right, claim or demand against Chipotle, and Chipotle had not registered disagreement with any position of" the plaintiff's). This is an intermediate approach between the positions advanced by the parties. It requires some opposition between the employer and employee but is not tethered to a particular process. Thus, a dispute can arise upon the filing of an internal complaint, so long as the employer expressly or constructively disagrees with the employee's position. This interpretation hews to the ordinary meanings of both "dispute" and "arise"

14

and accounts holistically for the EFAA's language.[9]

Applying this understanding, we have no trouble concluding that Cornelius's dispute arose prior to March 3, 2022. According to Cornelius's Complaint, she submitted at least six written, internal complaints to CVS between September 2019 and June 2020. Moreover, as Cornelius alleged, "CVS always arbitrarily and sexistly sided with [Patel], dismiss[ed her] complaints of discrimination, and utterly fail[ed] to remedy [the] hostile work environment." App. at 11. This is enough to say that CVS disagreed with Cornelius's position as to Patel's conduct. Accordingly, a "dispute" "arose" while Cornelius was employed at CVS, long before the EFAA's March 3, 2022, effective date, and Cornelius's claims are not shielded from arbitration.

We will therefore affirm the District Court's holding that the EFAA does not apply to Cornelius's Title VII claim.

### B. Whether a Valid and Enforceable Agreement to Arbitrate Existed

Under New Jersey law, no meeting of the minds to arbitrate exists when an agreement provides insufficient notice of the waiver of trial rights. *Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 773 A.2d 665, 671 (N.J. 2001). In addition to finding that the EFAA did not bar arbitration of Cornelius's claims, the District Court also

---

[9]   We recognize that it may not always be easy to tell when an employee first registers disagreement with his or her employer or when an employer disagrees with a position of an employee. *See, e.g.*, *Famuyide*, 111 F.4th at 898.

15

considered whether an agreement to arbitrate existed between Cornelius and CVS. It found that CVS "made an offer to enter an arbitration agreement by notifying [Cornelius] of the Arbitration Policy through the Arbitration Training Course," that Cornelius "acknowledged electronic receipt of the arbitration agreement and relevant material," that she did not opt-out, and that she entered the agreement voluntarily. *Cornelius*, 2023 WL 6876925, at *4. On that basis, the District Court held that the parties entered a valid agreement to arbitrate. Cornelius challenges this conclusion.

The parties agree, as do we, that despite acknowledging the Rule 12(b)(6) standard, the District Court applied the Rule 56 summary judgment standard because it considered facts and evidence outside Cornelius's Complaint. *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (applying the Rule 56 summary judgment standard when "the complaint and its supporting documents are unclear regarding the agreement to arbitrate" or "the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue").

The disagreement between the parties centers on whether the District Court's use of the Rule 56 standard also required it to allow Cornelius an opportunity for discovery. Specifically, Cornelius contends that this Court's decision in *Guidotti* requires the trial court to give her an opportunity to conduct discovery before determining whether she agreed to arbitrate. *See id.* at 774-76. CVS counters that, even under *Guidotti*, discovery "is not always warranted before deciding a motion to compel arbitration under a Rule 56 standard" and

16

that Cornelius failed to show that discovery was necessary.[10] CVS Br. at 45.

We recently clarified the scope of our holding in *Guidotti*. *See Young v. Experian Information Solutions, Inc.*, 119 F.4th 314 (3d Cir. 2024). In *Young*, we noted that the seemingly mandatory language of *Guidotti* "is more prescriptive than is helpful or accurate" and that its "call for limited discovery into arbitrability is best understood as being itself limited." *Id.* at 319. We explained that *Guidotti* should "be read as encouraging factual discovery when such discovery is warranted, which will often be the case." *Id.* Nonetheless, discovery is not required "when no factual dispute exists as to

---

[10] CVS also argues that Cornelius failed to request discovery altogether. We disagree. In her opposition to CVS's motion to compel, Cornelius asserted that the District Court "'must [] give[] [her] the opportunity to conduct limited discovery on the narrow issue concerning the validity' of the purported arbitration agreement." App. 67 n.43 (quoting *Guidotti*, 716 F.3d at 774). Any technical defect with this request is excusable because the District Court converted CVS's motion to dismiss without notice. *See Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 846 (3d Cir. 1992) (excusing plaintiff's "fail[ure] to file a Rule 56[(d)] affidavit" where plaintiff "repeatedly argued in her district court briefs that consideration of [defendant's] summary judgment motion should be postponed"); *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 284 (3d Cir. 1991) (holding that district court erroneously converted motion to dismiss into one for summary judgment without giving a reasonable opportunity to conduct discovery).

the existence or scope of the arbitration agreement." *Id.* at 320. Notably, *Young* post-dates the order on review and the District Court and parties were not privy to its holding.

In light of *Young*, we must consider whether factual disputes must be resolved to determine whether CVS and Cornelius agreed to arbitrate. *Id.* at 320 (discovery is warranted unless "the movant show 'there is no genuine dispute as to any material fact'" (quoting Fed. R. Civ. P. 56(a)). A non-movant is generally entitled to discovery if he or she surmounts Rule 56(d)'s modest procedural threshold. *See* Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may," among other things, "allow time…to take discovery"); *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) ("District courts usually grant properly filed Rule 56[(d)] motions as a matter of course." (internal quotations omitted)). "This is particularly so when…relevant facts are under the control of the moving party." *Id.*[11]

Cornelius argues that she surmounted the Rule 56(d) threshold for discovery. She points to "dozens of factual disputes" that she raised in her opposition to CVS's motion to compel. Br. at 33. She summarizes these disputes into three groups. First, she "cited facts establishing…that [CVS's] confusing arbitration[-]related-documents could easily…be

---

[11] We emphasize that even if a non-movant satisfies this burden, discovery should be "limited" to "the narrow issue concerning the [existence and] validity of the arbitration agreement." *Guidotti*, 716 F.3d at 775.

misconstrued as a routine component of a training program." Br. at 36 (internal quotations omitted). Second, Cornelius asserts that the "training documents confusingly and unpredictably shift[] between inconsistent propositions on important arbitration-related provisions, including the right to legal counsel[.]" Br. at 36-37 (internal quotations and footnote omitted). Finally, she alleged that there were "multiple material misrepresentations by [CVS] in their arbitration-related documents." Br. at 39 (internal quotations omitted). She also argues that the District Court did not make a finding as to what documents—the Arbitration Policy, Policy Guide, and/or Training Course—constituted the arbitration agreement. In her view, the District Court either "resolv[ed] all of these disputes against [her] in the absence of discovery[] or fail[ed] to acknowledge them at all." Br. at 33 (footnote omitted).[12]

Some of Cornelius's disputes—whether factual or legal—appear to go to the heart of the agreement's validity under New Jersey law.[13] *See Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288 n.18 (3d Cir. 2017) ("When deciding whether the parties agreed to arbitrate a certain

---

[12]    We review a District Court's discovery orders for abuse of discretion. *See United States v. Collins*, 36 F.4th 487, 494 (3d Cir. 2022).

[13]    Although the arbitration agreement delegates to the arbitrator threshold questions regarding the validity and enforceability of the Arbitration Policy, questions regarding the formation of the arbitration agreement must be resolved in federal court. *Young*, 119 F.4th at 321.

matter, courts generally should apply ordinary state-law principles that govern the formation of contracts." (internal quotations and ellipses omitted)). She argues, for example, that important language is spread across the Arbitration Policy, Arbitration Guide, and Training Course, precluding any "clear and unmistakable" agreement to arbitrate or effective waiver of her right to trial. [14] Br. at 40 (emphasis and internal quotations omitted); *Skuse v. Pfizer, Inc.*, 236 A.3d 939, 949 (N.J. 2020) ("Our jurisprudence has stressed that when a contract contains a waiver of rights—whether in an arbitration or other clause—the waiver must be clearly and unmistakably established." (internal quotations omitted)). She accurately notes that CVS's Arbitration Policy makes no mention of the right to legal counsel, that being found only in the Training Course. *Compare* App. at 23-26 *with* App. at 45. Similarly, the procedures for opting out are found only in the Policy Guide. And while CVS's Arbitration Policy states that future covered disputes will be arbitrated, it does not affirmatively state whether any right is being relinquished. Finally, the presentation of the arbitration agreement as a "training" may

---

[14] The extent to which the location of information matters depends on which documents comprise the agreement to arbitrate. We agree with Cornelius that it is not entirely clear which materials the District Court determined comprise the agreement to arbitrate. The District Court appeared to draw from the Arbitration Policy, Training Course, and Policy Guide in rendering its decision. From our review of its opinion, however, it is not clear to us that the District Court determined which, or what combination of, these documents constituted the agreement to arbitrate. Accordingly, we do not address Cornelius's argument regarding unconscionability here.

20

also be relevant to whether the parties agreed to arbitrate. *See Skuse*, 236 A.3d at 954 (affirming introduction of an arbitration agreement during training only where the "content and tone" of defendant's "communication could not be misconstrued as a routine component of a training program").

CVS contends that Cornelius merely presents "a series of legal arguments regarding the content of the arbitration documents," which cannot satisfy Rule 56(d)'s threshold for discovery. CVS Br. at 40 (emphasis omitted). CVS also asserts that these "legal arguments" are meritless. CVS Br. at 40-43.

CVS may or may not be correct. Were Cornelius's legal challenges to the arbitration agreement, especially under *Skuse*, squarely addressed, we might be more inclined to agree with CVS's argument that we need only consider that legal question. *See* Cornelius Opp'n Dist. Ct. Dkt. 11 at 10-21. The District Court, however, did not appear to consider New Jersey's waiver-of-rights law or whether there were any factual disputes warranting discovery under Rule 56(d). In light of a district court's broad discretion to order and control the scope of discovery, we decline to address, in the first instance, whether discovery is warranted.[15] *See Lloyd v. HOVENSA,*

---

[15] For instance, Cornelius appears to argue that any waiver under the Arbitration Policy is invalid under New Jersey law because employees could not obtain copies of the Policy or Policy Guide after the training and the record is not clear to what extent employees could access such materials. The District Court may or may not find that this assertion is relevant to determining waiver under *Skuse* and related cases and, if so,

*LLC*, 369 F.3d 263, 274 (3d Cir. 2004) ("It is well established that the scope and conduct of discovery are within the sound discretion of the trial court." (internal quotations omitted)); *see also Ray v. Robinson*, 640 F.2d 474, 478 (3d Cir. 1981) ("A failure to recognize the existence of authority to exercise discretion does not amount to its exercise. If a district court fails to exercise its discretion, that is itself an abuse of discretion." (internal citation omitted)). While the District Court intended to resolve CVS's motion under Rule 12(b)(6), which would give no occasion for the District Court to consider whether discovery was warranted, its consideration of materials outside of the Complaint placed its analysis within the realm of Rule 56 and the possible need for discovery.

We will therefore vacate the District Court's dismissal order and remand for consideration of whether discovery into the validity of the arbitration agreement is warranted under Rule 56(d) and for consideration of Cornelius's legal challenges to the arbitration agreement under New Jersey law.

III. CONCLUSION

For the reasons set forth above, we will affirm in part, vacate judgment, and remand for further proceedings consistent with this opinion.

---

may or may not also find that discovery is necessary to resolve such dispute.