Filed 8/25/25  Gomez v. Enterprise Rent-A-Car of Los Angeles CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JENNIFER MARIA GOMEZ, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ENTERPRISE RENT-A-CAR COMPANY OF LOS ANGELES, LLC, <br><br> Defendant and Appellant. | B340594 <br><br> (Los Angeles County Super. Ct. No. 23STCV23777) |

APPEAL from an order of the Superior Court of Los Angeles County, Christopher K. Lui, Judge.  Reversed.

Law Offices of Stephen J. Kepler, Stephen J. Kepler; Littler Mendelson, Monica M. Quinn, and Melanie H. Rollins for Defendant and Appellant.

Pairavi Law, Edwin Pairavi, and Joshua M. Mohrsaz for Plaintiff and Respondent.

_____

Appellant Enterprise Rent-a-Car Company of Los Angeles appeals the trial court's denial of Enterprise's motion to compel arbitration on the complaint brought by respondent Jennifer Maria Gomez. The sole issue on appeal is whether the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (the EFAA) permitted Gomez to invalidate the arbitration agreement she signed with Enterprise. We hold the trial court erred in finding it did and therefore reverse.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.   *Gomez Files a Complaint*

In November 2022, Gomez filed a complaint with the California Civil Rights Department (CRD), alleging that, while employed with Enterprise, she "was subject to constant and pervasive harassment at the hands of her co-workers. Upon Complainant informing Employers of the harassment and asking that Employers take immediate remedial action, Employers refused to act, allowing the unlawful conduct to proceed, which ultimately led to Complainant's resignation." The CRD issued a right-to-sue letter.

In September 2023, Gomez filed a complaint against Enterprise and several of its employees, alleging she was sexually harassed during the more-than-two years she worked at Enterprise. Specifically, she alleged that on multiple occasions, several employees made inappropriate sexual gestures, comments, and jokes directed toward her, and watched pornography in Enterprise's rental cars during work hours.

---

[1] We limit our summary to the facts and procedural history relevant to the issues raised on appeal.

Gomez alleged that, on "multiple occasions," she complained about the harassment to "the branch manager, Joey Fabian." "Fabian simply told her that he would look into it[,] but no remedial action was taken." In August 2021, after Enterprise sent Gomez to work in a downtown Los Angeles branch, Gomez complained to a "female branch manager" about harassment. "The branch manager simply giggled and rather than take any action, she also began making jokes about it with" the employees accused of harassment. In September 2021, Gomez reached out to "Cheril (Last Name Unknown) [*sic*] via text message requesting the area managers contact information so that she could complain about the ongoing harassment." "Cheril" told Gomez she would provide Gomez's number to the area managers, but no area manager ever contacted Gomez.

In October 2021, Gomez told "Jose Hercules that she was resigning and was giving him her two weeks['] notice. She also informed the Human Resources ('HR') department via email about her notice and stated 'for multiple reason I am resigning. Feel free to reach out and I can explain my reasons.'" An HR representative contacted her the next day and Gomez "provided a full description of her complaints." When asked why she had not previously complained, Gomez explained she had complained to Fabian, "who told her he would follow up on it, but nothing was done."

Based on these allegations, Gomez brought five causes of action against Enterprise: gender discrimination, harassment/hostile work environment, failure to prevent harassment/hostile work environment, retaliation, and

constructive termination in violation of public policy.[2]  In her gender discrimination cause of action, Gomez alleged she "was terminated in retaliation for her complaints regarding the harassment she suffered."  In her failure to prevent harassment cause of action, Gomez alleged Enterprise "failed and/or refused to take all reasonable steps to prevent harassment and retaliation, including but not limited to the imposition of an effective policy against such discrimination and harassment; the imposition of non-discriminatory, non-harassment practices and procedures; prompt and thorough good faith and reasonable investigations; prompt and appropriate discipline against transgressors, and other conduct according to proof at trial."  In her retaliation cause of action, Gomez alleged that after she complained of "gender discrimination and/or harassment," Enterprise "retaliated against Plaintiff" by "forcing Plaintiff to resign her employment as a result of their inaction."  Similarly, in her constructive termination cause of action, Gomez alleged she "had no choice but to resign from her position with Defendants Enterprise [*sic*], as any reasonable employee would due to the harassment to which she was subjected to."

In November 2023, Enterprise answered the complaint, denying "generally and specifically each and every allegation in the Complaint" and asserting as its thirty-fifth affirmative defense that Gomez's claims were "governed by an agreement to arbitrate."

---

[2] Gomez also named the three employees who allegedly harassed her as defendants to the harassment/hostile work environment cause of action.

## B.  *Enterprise Moves to Compel Arbitration*

In January 2024, Enterprise filed a motion to compel arbitration, attaching an arbitration agreement providing that "any controversy, claim, or dispute between Employee and Employer . . . relating to or arising out of Employee's application for employment, employment, or the cessation of that employment will be submitted to final and binding arbitration as the exclusive remedy for such controversy, claim or dispute." Gomez signed the agreement as "Employee" and a regional vice president of Enterprise signed it as "Employer."  The agreement stated it was "governed by the Federal Arbitration Act."

In May 2024, Enterprise filed an amended motion to compel arbitration, explaining the amendment was in response to an April 2024 communication from Gomez's counsel that she intended to oppose Enterprise's motion on the basis of the EFAA. Citing *Kader v. Southern California Medical Center, Inc.* (2024) 99 Cal.App.5th 214 (*Kader*), Enterprise argued "the EFAA applies 'with respect to any dispute or claim that arises or accrues on or after . . . March 3, 2022" (the EFAA's effective date). Because Gomez alleged Enterprise retaliated against her and forced her to resign in 2021—i.e., before March 3, 2022—the EFAA was inapplicable because a "dispute arises when one party asserts a right, claim, or demand, and the other side expresses disagreement or takes an adversarial posture."

In July 2024, Gomez opposed the motion to compel, arguing only that the EFAA permitted her to invalidate the arbitration agreement.  She reiterated that while she had complained multiple times about the harassment, Enterprise "never once indicated [it] disagreed with or took an adversarial posture in the face of Plaintiff's assertions regarding the harassment," and that

5

it was Enterprise's "complete inaction" that resulted in her resignation. Gomez asserted Enterprise took no adversarial posture with regards to her claims until it filed its answer in November 2023. Gomez also submitted the declarations of Tyler House (an Enterprise "Area Manager"), Sheryl-Ann Morgan (a former Enterprise "Regional HR Generalist Manager"), and Jose Hercules (an Enterprise employee she referred to in the complaint as "another branch manager").[3] Each of the three declarants attested that Gomez never complained to them about sexual harassment, and they had not heard from "any other source" that Gomez had experienced or complained about sexual harassment.[4] Gomez argued these declarations "buttressed" the conclusion that no dispute arose before the EFAA's effective date because the declarations demonstrated Enterprise "unequivocally denies that sexual harassment or complaints thereof occurred at all."

In its reply, Enterprise repeated its contention that Gomez's complaint alleged Enterprise retaliated against her in 2021. As to the declarations submitted by Gomez, Enterprise "believes those declarations to be entirely true" but argued "Plaintiff presumably has other witnesses who will say otherwise, and, in any event, Plaintiff cannot now contradict her own pleadings by pointing to evidence that Plaintiff never complained."

---

[3] According to a declaration Gomez's attorney submitted: "During the course of litigation, Defendant produced three declarations from its current and former employees."

[4] Morgan and Hercules both additionally stated their recollection that Gomez resigned because she found a better job.

6

### C.  *The Court Denies Enterprise's Motion*

In August 2024, the trial court denied Enterprise's motion, finding the EFAA rendered the arbitration agreement unenforceable.  The court reasoned that while Gomez's "claim" may have accrued before the EFAA's effective date, a "dispute" did not arise until after the effective date, "because Defendant did not disagree [with] or controvert Plaintiff's complaints prior to that date.  By doing nothing, Defendant may be deemed to have implicitly agreed that such conduct constituted sexual harassment, and by doing nothing to address it, was ratifying it." The court did not address the allegations in Gomez's complaint that Enterprise retaliated against Gomez for her complaints by terminating her or forcing her to resign.

Enterprise timely appealed.

## DISCUSSION

### A.  *Relevant Law*

#### 1.  The EFAA

The EFAA provides in pertinent part that "at the election of the person alleging conduct constituting a sexual harassment dispute . . . , no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to . . . the sexual harassment dispute."  (9 U.S.C. § 402(a).)  "The Act became effective on March 3, 2022."  (*Kader*, *supra*, 99 Cal.App.5th at p. 219.)  "By its terms, the EFAA applies 'with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act.'"  (*Doe v. Second Street Corp.* (2024) 105 Cal.App.5th 552, 566.)  While the EFAA does not define

7

"dispute," the applicability of the EFAA "shall be determined under Federal law."  (9 U.S.C. § 402(b).)

All federal circuit courts considering the definition of "dispute"—as well as the vast majority of federal district courts—have concluded that a "dispute" arises under the EFAA when the parties have some sort of disagreement or adversarial relationship regarding a position the plaintiff has taken or a demand the plaintiff has made about the alleged sexual harassment conduct.[5]  The majority of courts considering this issue have also expressly held the EFAA requires more than the mere occurrence of the underlying sexual harassment.  (See *Famuyide, supra*, 111 F.4th at p. 898; *Hodgin, supra*, 666 F.Supp.3d at pp. 1329–1330 ["[a] dispute entails disagreement,

---

[5] (See *Cornelius v. CVS Pharmacy Inc.* (3d Cir. 2025) 133 F.4th 240, 247 (*Cornelius*), citing *Famuyide v. Chipotle Mexican Grill, Inc.* (8th Cir. 2024) 111 F.4th 895, 898 (*Famuyide*) [dispute had not arisen when plaintiff "had not asserted any right, claim, or demand against [defendant], and [defendant] had not registered disagreement with any position of [plaintiff's]"]; accord, *Memmer v. United Wholesale Mortg., LLC* (6th Cir. 2025) 135 F.4th 398, 409 (*Memmer*) [adopting approach in *Famuyide* and *Cornelius* and holding "[t]he relevant question is when the parties became adverse to one another"]; see also, e.g., *Scoggins v. Menard, Inc.* (S.D. Ohio Aug. 19, 2024, Civ. No. 2:24-CV-00377) 2024 U.S.Dist. LEXIS 147638, *17 ["a dispute arises when a person 'asserts a right, claim, or demand and is met with disagreement on the other side' "]; *Hodgin v. Intensive Care Consortium, Inc.* (S.D. Fla. 2023) 666 F.Supp.3d 1326, 1329–1330 (*Hodgin*) ["the dispute had arisen" when plaintiff was "in an adversarial posture with her employer in a forum with the potential to resolve the claim"]; *Kader, supra*, 99 Cal.App.5th at pp. 223–224 [adopting approach of *Famuyide*].)

not just the existence of an injury"].)[6]  The " 'definitions within the [EFAA] . . . make clear that a dispute requires more than an injury.  The [EFAA] . . . defines "sexual harassment dispute" as "*a dispute* relating to conduct that is alleged to constitute sexual harassment."  [(9 U.S.C. § 401 (italics added.)]  If the underlying conduct alone—the sexual . . . harassment—automatically gave rise to a dispute, then the legislature's use of the word "dispute" within [the] . . . definition[] would be superfluous. . . .  [A] "sexual harassment dispute" would mean "conduct that is alleged to constitute sexual harassment.". . .  [But a] "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." ' " (*Kader, supra*, 99 Cal.App.5th at pp. 223–224.)

---

[6] Some federal district courts have held the occurrence of the sexual misconduct may itself be sufficient for a dispute to arise.  (See, e.g., *Castillo v. Altice USA, Inc.* (S.D.N.Y. 2023) 698 F.Supp.3d 652, 656–657 [" '[a] dispute arises when the conduct which constitutes the alleged sexual assault or sexual harassment occurs,' "], quoting *Barnes v. Festival Fun Parks, LLC* (W.D.Pa. June 27, 2023, Civ. No. 3:22-CV-165) 2023 U.S.Dist. LEXIS 112915.)  But most courts have not only reached a different conclusion, but also expressly rejected the holdings of these cases (see e.g., *Kader, supra*, 99 Cal.App.5th at p. 223 [rejecting sexual conduct as reflecting a dispute and disagreeing with *Barnes* on this point, noting "[t]he *Barnes* court acknowledged that the terms 'dispute' and 'claim' have distinct meanings as used by Congress, but then conflated the terms in that court's analysis"]; *Memmer, supra,* 135 F.4th at p. 410 ["[w]e do not find those opinions persuasive, because they deprive the word 'dispute' of its ordinary meaning"]; *Famuyide, supra*, 111 F.4th at p. 898.)

9

Whether "a dispute has arisen for purposes of the [EFAA] is a fact-specific inquiry in each case . . . .  A dispute arises when one party asserts a right, claim, or demand, and the other side expresses disagreement or takes an adversarial posture.  [Citation.]  In other words, '[a] dispute cannot arise until both sides have expressed their disagreement, either through words or actions.' " (*Kader, supra*, 99 Cal.App.5th at pp. 222–223.)

## 2.    Standard of Review

"We review de novo a trial court's determination of the validity of an agreement to arbitrate when the evidence presented to the trial court was undisputed." (*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1567.)  "We review under the substantial evidence standard the trial court's resolution of disputed facts." (*Ibid.*)  Here, the trial court based its decision completely on allegations in the complaint and made no factual findings.  Because we base our conclusion on the undisputed evidence that Gomez's complaint alleges Enterprise retaliated against her by forcing her to resign before the EFAA's effective date, we review the trial court's order de novo.

## B.    *The Court Erred in Denying Enterprise's Motion*

Gomez does not dispute that, unless the EFAA permits her to invalidate the arbitration agreement, her entire complaint is subject to arbitration.  Enterprise does not dispute that, if Gomez's complaint alleges "any dispute or claim that arises or accrues on or after" March 3, 2022, the EFAA would permit Gomez to invalidate the arbitration agreement.

While Gomez does not contend her *claim* arose or accrued on or after March 3, 2022, she does contend a *dispute* first arose on or after that date.  The trial court agreed, finding that while

Gomez's "***claim*** may have accrued before March 3, 2022, . . . a ***dispute*** did not [a]rise before March 3, 2022, because Defendant did not disagree or controvert Plaintiff's complaints prior to that date. By doing nothing, Defendant may be deemed to have implicitly agreed that such conduct constituted sexual harassment, and by doing nothing to address it, was ratifying it."

On appeal, Enterprise contends the trial court erred in "inexplicably ignor[ing] all of Gomez's allegations in her Complaint which assert that Enterprise retaliated against Gomez (i.e., took an adversarial posture) in response to Gomez's complaints of sexual harassment, culminating in her termination." We agree the court erred.

A "dispute can arise upon the filing of an internal complaint, so long as the employer expressly *or constructively* disagrees with the employee's position." (*Cornelius*, *supra*, 133 F.4th at p. 248, italics added.) In *Cornelius*, the plaintiff submitted multiple internal complaints to her employer about harassment but the employer " 'always arbitrarily and sexistly sided with [the manager], dismiss[ed her] complaints of discrimination, and utterly fail[ed] to remedy [the] hostile work environment.' " (*Ibid.*) The Third Circuit concluded these allegations were "enough to say that [the employer] disagreed with [the plaintiff]'s position as to [the manager]'s conduct," and thus a dispute arose during the plaintiff's employment. (*Ibid.*)

In *Combs v. Netflix, Inc.* (C.D.Cal. Apr. 16, 2025, Civ. No. 2:24-cv-09037-MRA-MAA) 2025 U.S.Dist. LEXIS 94527 (*Combs*)—an opinion issued eight months after the trial court made its ruling—the plaintiff therein alleged "she made several complaints to Defendant about the workplace environment *prior* to her termination. [Citation.] She states that Defendant did not

11

respond to these complaints. [Citation.] Thus, Defendant effectively expressed disagreement with Plaintiff's complaints through silence—that is, it took a position adverse to Plaintiff by not addressing her concerns." (*Id.* at \*11.) The district court added that the plaintiff "also alleges that Defendant terminated her for making complaints about sexual harassment and creating a hostile work environment *prior* to the enactment of the EFAA. [Citation.] Therefore, even if Defendant's silence is not sufficient to infer an adversarial posture, its termination of Plaintiff, without ever addressing any of her complaints, certainly is." (*Ibid.*)

Similarly, Gomez alleged that during her employment with Enterprise—which ended before the EFAA's effective date in March 2022—she complained multiple times about harassment to three managers. One manager promised to look into it, "but no remedial action was taken." Another manager stated she would pass Gomez's phone number to certain area managers, but no area manager ever contacted Gomez. In other words, like the employers in *Cornelius* and *Combs*, Gomez also contends Enterprise essentially dismissed her complaints of harassment and failed to remedy the hostile work environment. Furthermore, Gomez alleged she "was terminated in retaliation for her complaints regarding the harassment she suffered," accusing Enterprise of "retaliat[ing] against" her by "forcing Plaintiff to resign her employment as a result of their inaction" and asserting she "had no choice but to resign from her position . . . as any reasonable employee would due to the harassment to which she was subjected to."

By complaining about the harassment, Gomez asserted a right to be free from such conduct. By failing to address the

12

harassment, permitting it to continue, and retaliating against Gomez by "forcing" her to resign, Enterprise "constructively disagree[d]" with Gomez's position. (*Cornelius*, *supra*, 133 F.4th at p. 248.) Like the Third Circuit and the Central District of California, we conclude this is enough to determine a dispute arose before the EFAA's effective date.

### C. *Gomez's Arguments to the Contrary Are Unavailing*

#### 1. *Kader* Is Distinguishable

Gomez contends "*Kader* stands for the proposition that expressing disagreement or taking an adversarial position does not occur through inaction, disregard, or even threatened retaliatory termination in the face of a complaint of sexual harassment." Gomez misinterprets *Kader*'s holding.

In *Kader*, the plaintiff asserted his employer's chief medical officer sexually assaulted and harassed him. (*Kader*, *supra*, 99 Cal.App.5th at pp. 218–219.) The chief medical officer "threatened to fire [the plaintiff] if he told anyone." (*Id.* at p. 224.) While it was "unclear from the complaint" whether the plaintiff complained about the chief medical officer's conduct, "at oral argument, [plaintiff] Kader's attorney conceded that Kader never complained to anyone at the [defendant and employer] Center about [chief medical officer] Rasekhi's conduct." (*Id.* at pp. 219, 224.)

In rejecting the *Kader* defendants' contention that "a dispute arises when the alleged conduct occurs that constitutes sexual assault or sexual harassment," *Kader* held "[a] dispute arises when one party asserts a right, claim, or demand, and the other side expresses disagreement or takes an adversarial

13

posture." (*Kader, supra*, 99 Cal.App.5th at pp. 223, 222.) In applying this definition to the facts at hand, the appellate court concluded that because "[t]here was no evidence that Kader asserted any right, claim, or demand prior to filing charges with the DFEH in May 2022" and "no evidence that the Center defendants disagreed with any claim asserted by Kader until after he filed charges with DFEH," the appellate court concluded no dispute arose between the parties before May 2022. (*Id.* at p. 224.)

In other words, *Kader* did not hold, as Gomez contends, that a dispute could never occur "through inaction, disregard, or even threatened retaliatory termination in the face of a complaint of sexual harassment." It held that, when a plaintiff does not complain of sexual assault or sexual harassment to anyone, there is no dispute.

Here, by contrast, Gomez alleged she complained in vain to multiple managers who were not the employees harassing her, and Enterprise "failed and/or refused" to correct the offending behavior and retaliated against her by "forcing" her to resign due to the intolerable working conditions. *Kader* is inapposite.[7]

---

[7] Citing to *Murrey v. Superior Court* (2023) 87 Cal.App.5th 1223, Gomez also argues we should find the EFAA applies to any case filed after its enactment. We decline. In *Murrey*, the plaintiff "filed her case approximately one year before the Act was enacted." (*Id.* at p. 1235.) In explaining why it need not consider "*when* the underlying sexual harassment or assault took place" to determine EFAA applicability, the appellate court noted the EFAA "is only applicable to cases filed after its enactment." (*Ibid.*) In other words, *Murrey* holds only that the threshold requirement for the EFAA to apply is the case being filed after

*(Fn. is continued on the next page.)*

### 2. Enterprise Is Not Estopped From Relying on Gomez's Allegations

Gomez also argues that, based on Enterprise's answer and three declarations Enterprise supplied denying Gomez complained about sexual harassment, Enterprise should be estopped from denying "the sexual harassment dispute arose at the very earliest on November 10, 2022, when Respondent filed charges with the CRD, . . . or, as Respondent posits, when Appellant filed its Answer to Respondent's Complaint on November 1, 2023 and expressed disagreement with Respondent's sexual harassment complaint for the very first time." Gomez contends it would be a "miscarriage of justice" to permit Enterprise "to be permitted to deny the sexual harassment . . . and claim it occurred."

### (a) The Declarations

In opposing Enterprise's motion to compel arbitration, Gomez submitted the declarations (again, originally prepared and provided to Gomez by Enterprise) of Tyler House (an Enterprise "Area Manager"), Sheryl-Ann Morgan (a former Enterprise "Regional HR Generalist Manager"), and Jose Hercules (an Enterprise employee Gomez alleged was "another branch manager"). The declarants averred Gomez had not complained to them about sexual harassment, and they had not heard from "any other source" that Gomez had experienced or complained about sexual harassment. These declarations do not preclude Enterprise's arguments on appeal.

---

the EFAA's enactment; *Murrey* did not hold this was the *only* requirement.

First, Gomez alleged she complained to Joey Fabian, a "female branch manager," and "Cheril (Last Name Unknown)." Even were we to assume "Cheril (Last Name Unknown)" is the same person as "Sheryl-Ann Morgan," Gomez submits no declaration from Joey Fabian or the unidentified female branch manager attesting they never heard her complain. Therefore, these declarations establish only that the three declarants were unaware of any complaints made by Gomez, not that Gomez made no complaints at all.

Second, Enterprise can consistently maintain on the one hand that it does not believe Gomez complained about sexual harassment or that sexual harassment occurred, and on the other hand that Gomez's complaint *alleged* she complained, and Enterprise "failed and/or refused" to address the harassment, rendering the EFAA inapplicable because—according to the allegations in Gomez's complaint—a dispute about the harassment occurred before the EFAA's effective date.

### (b)  Enterprise's Answer

Gomez also argues that Enterprise is estopped from asserting a dispute occurred before her resignation because of its answer "denying sexual harassment or complaints of harassment." As stated above, it is not inconsistent for Enterprise to maintain no harassment or complaints occurred while also arguing the EFAA does not apply.

In any case, Gomez provides no authority—nor have we discovered any—holding that a party's unverified answer denying "generally and specifically each and every allegation in the Complaint" estops that party from later agreeing with any allegations contained within the complaint. Indeed, our Supreme Court has held " ' " '[i]t is well settled in California that a

16

defendant may plead as many inconsistent defenses in an answer as she may desire and that such defenses may not be considered as admissions against interest in the action in which the answer was filed.' " ' " (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 240–241.)

"The foundation of estoppel is justice and good conscience. Estoppel applies to prevent a person from asserting a right where his conduct makes it unconscionable for him to assert it; it is a bar to stating the truth when it would be unfair to state it. Estoppel is an equitable doctrine. It acts defensively only. It operates to prevent one from taking an unfair advantage of another, but not to give an unfair advantage to one seeking to invoke the doctrine. [Citations.] Estoppel should be employed to prevent or mitigate injustice, not to create or aggravate it." (*Estate of Hafner* (1986) 184 Cal.App.3d 1371, 1395.) It would not be in furtherance of justice or good conscience to bar Enterprise from relying on allegations Gomez made to argue that, according to Gomez, a dispute about sexual harassment occurred before she resigned.

## DISPOSITION

The trial court's order is reversed. Appellant is awarded its costs on appeal.

NOT TO BE PUBLISHED

M. KIM, J.

We concur:

BENDIX, Acting P. J.          WEINGART, J.

17