Filed 5/28/26  Winslett v. Dothan Security CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| BEVERLY WINSLETT, | D085715 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CIVSB2403846) |
| DOTHAN SECURITY, INC. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Bernardino County, Tony Raphael, Judge.  Affirmed.

Gordon Rees Scully Mansukhani, Matthew G. Kleiner, and Andrea K. Williams for Defendants and Appellants.

Employee Justice Legal Group, Kaveh S. Elihu, and Daniel J. Friedman for Plaintiff and Respondent.


In 2022, Congress passed the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (EFAA) (9 U.S.C. §§ 401–402), which amended the Federal Arbitration Act (FAA) (*id.*, § 1 et seq.).  "In general terms, the EFAA renders arbitration agreements unenforceable at the plaintiff's election in sexual assault and sexual harassment cases that

arise or accrue on or after March 3, 2022, the EFAA's effective date." (*Doe v. Second Street Corp.* (2024) 105 Cal.App.5th 552, 559 (*Doe*)).

In this case, defendants Dothan Security, Inc. (DSI) and Phillip Bailey appeal an order denying their motion to compel plaintiff Beverly Winslett to arbitrate her sexual harassment and other employment-related claims against them and to stay proceedings. The trial court denied the motion on the ground the arbitration agreement was unenforceable under the EFAA. Because we conclude that Winslett's claims accrued after the EFAA became effective, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

DSI has its corporate office in Alabama. It employs thousands of people to provide security services in 15 states, including California, and purchases supplies in interstate commerce. DSI hired Winslett as a security guard on January 18, 2022. As part of the process, she reviewed and signed several documents, including a Binding Arbitration Agreement (Agreement). The Agreement states it "will be governed by the Federal Arbitration Act" and requires "arbitration of all claims, controversies, or other disputes arising out of [Winslett's] employment or its termination (collectively, the 'Claims') that either party may have against the other, including [DSI's] . . . current and former . . . employees."

Two years later, Winslett filed a complaint for damages and other relief against DSI and Bailey in the trial court.[1] She asserted that Bailey was an employee of DSI and was her site supervisor on January 18, 2022. On that date, Bailey allegedly "groped [her] legs and groin area and rubbed himself

---

[1]     Our recitation of the facts regarding the claimed sexual assault/harassment is based on the allegations of the complaint.

on her" while the two were inside a security guard station. Winslett protested, but he "continued inappropriately touching [her]" and said, " 'I am the site supervisor, your schedule depends on me. I can do what I want.' "

Two weeks later, Winslett alleged, Bailey "kept trying to touch her" as she attempted to report a theft. On February 9, 2022, she "formally reported [Bailey's] assault and battery to [DSI's general manager], who "pressured [her] to retract her claim, saying, 'Keep your head down and work. Reporting it means losing your schedule, overtime. It is how things go in security, especially for women of color.' "

On March 17, 2022, DSI put Winslett on the graveyard shift and reduced her hours. Although Bailey worked the following shift, he "arrive[d] thirty minutes early, and crowd[ed] into the single-occupancy guard booth with [her] to ostensibly receive updates." Initially, at least, DSI ignored Winslett's repeated requests for a transfer to a site away from Bailey. Eventually, she was sent to one with "a moldy and filthy guard shack." By May 27, 2022, Winslett concluded that Bailey's "unwelcome discriminatory and harassing conduct" and DSI's inaction created such a hostile work environment that she had to resign.

Winslett's complaint asserted causes of action for assault; battery; violations of civil rights laws; discrimination, harassment, failure to prevent discrimination and harassment, and retaliation, in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.); wrongful termination; violations of Labor Code provisions on retaliation, rest and meal breaks, and payment of wages; and unfair competition. She further alleged that at no time since her resignation had she been paid her final wages.

Six days after DSI was served with the complaint, its attorney sent Winslett's attorney an e-mail in which he requested that she submit her

claims to arbitration. After receiving no response to the e-mail, DSI filed a motion to compel arbitration and to stay proceedings. (Code Civ. Proc., §§ 1281.2, 1281.4.) It argued the Agreement involved interstate commerce and was valid and enforceable under the FAA; it covered all the claims alleged in the complaint; and the civil action had to be stayed until completion of arbitration. In support of the motion, DSI submitted a declaration from its president, Eddie Sorrells, who described DSI's interstate business operations and the paperwork associated with Winslett's hiring. Sorrells attached as an exhibit to his declaration a copy of the Agreement.

Winslett opposed the motion on multiple grounds. She argued DSI did not establish the existence of an arbitration agreement by admissible evidence. Winslett asserted the FAA did not require enforcement of the Agreement because her employment by DSI had a "trivial" impact on interstate commerce and because the EFAA rendered the Agreement unenforceable. She also maintained that the Agreement could not be enforced because it was unconscionable.

Winslett filed objections to Sorrells's declaration and to the Agreement. She filed her own declaration, in which she stated that she worked for DSI in California and never traveled outside California as part of her job. Winslett also filed a declaration from her attorney, who stated, "The majority of [Winslett's] claims are based on the sexual harassment she was subjected to at the hands of [Bailey]."

DSI filed a reply in which it responded to Winslett's arguments, repeating and expanding on points made in its initial moving papers. DSI claimed the EFAA did not apply because the alleged conduct on which Winslett's complaint was based occurred before the EFAA took effect and the

4

statute was not retroactive. DSI also filed objections to the declarations of Winslett and her attorney.

The trial court held a hearing on the motion to compel arbitration and to stay proceedings, after which it issued a written order. The court overruled all evidentiary objections, rejected Winslett's defense of unconscionability, and concluded that the FAA required enforcement of the Agreement except as to claims covered by the EFAA. It granted the motion to compel as to claims not covered by the EFAA, but denied it as to covered claims. The court ordered the parties to file supplemental briefs on which claims were covered and on whether the case should be stayed while any claims not covered were arbitrated.

In its supplemental brief, DSI, joined by Bailey,[2] again argued the EFAA did not apply because any sexual harassment dispute between the parties arose before the EFAA was enacted. DSI alternatively asserted that if the EFAA applied, only two counts alleging harassment under the FEHA were exempt from arbitration, and the civil action should be stayed until completion of arbitration of all other counts. In her supplemental brief, Winslett maintained that because her case related to a dispute about sexual assault or sexual harassment, the EFAA applied to her entire case, no individual claims were subject to arbitration, and no stay should issue.

The trial court held a second hearing on the motion to compel arbitration, after which it issued a written order. The court ruled that the EFAA "prohibits arbitration of the entire case" and denied the motion.

---

[2]     It is unclear from the record why Bailey did not join DSI's earlier filings. In their appellate briefs, the parties have treated Bailey as if he were a party to the motion, and we shall do the same. Subsequent references to DSI should be read to include Bailey unless the context indicates otherwise.

5

**DISCUSSION**

DSI attacks the order denying its motion to compel arbitration. It contends the trial court correctly ruled the Agreement was governed by the FAA and was not unconscionable, but erroneously ruled the EFAA made the Agreement unenforceable. DSI argues the EFAA does not apply to Winslett's case because the parties' dispute arose before the statute was enacted and the statute is not retroactive. It asks us to reverse the trial court's order.

An order denying a motion to compel arbitration is appealable. (Code Civ. Proc., § 1294, subd. (a).) Where a trial court has denied such a motion based on its interpretation and application of a statute to undisputed facts (here, the allegations of the complaint), we review the order de novo. (*Enmark v. KF Community Care, LLC* (2024) 105 Cal.App.5th 463, 471; *Baker v. Italian Maple Holdings, LLC* (2017) 13 Cal.App.5th 1152, 1158.)

We begin with the applicable statutes, the FAA and the EFAA. The FAA provides that a written arbitration agreement involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract *or as otherwise provided in chapter 4*." (9 U.S.C. § 2, italics added.)[3] Chapter 4 is the EFAA, which was "[e]nacted on March 3, 2022," and " 'limits the scope of [the FAA's] broad mandate to enforce arbitration agreements.' " (*Cornelius*

---

[3] The Agreement states it "will be governed by the [FAA]." Such a statement in an arbitration agreement suffices to make the FAA govern its enforceability even if the agreement does not involve interstate commerce. (*Tuufuli v. West Coast Dental Administrative Services, LLC* (2026) 117 Cal.App.5th 1048, 1054; *Barrera v. Apple American Group LLC* (2023) 95 Cal.App.5th 63, 72, 76; *Davis v. Shiekh Shoes, LLC* (2022) 84 Cal.App.5th 956, 963.)

6

*v. CVS Pharmacy Inc.* (3d Cir. 2025) 133 F.4th 240, 245 (*Cornelius*).) The EFAA provides:

> "Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute."
> (9 U.S.C. § 402(a).)

The quoted provision nullifies arbitration agreements in sexual assault and sexual harassment cases at the election of the complaining party. (*Olivieri v. Stifel, Nicolaus & Co., Inc.* (2d Cir. 2024) 112 F.4th 74, 84 (*Olivieri*); *Quilala v. Securitas Security Services USA, Inc.* (2025) 117 Cal.App.5th 75, 83 (*Quilala*).) Thus, when a party invokes the FAA to compel arbitration in a case involving allegations of sexual assault or sexual harassment, the court must decide whether the EFAA makes the arbitration agreement voidable.

There is no dispute this case involves the type of arbitration agreement and the type of allegations that fall within the scope of the EFAA. DSI concedes Winslett signed the Agreement before she started working as a security guard for DSI. It also concedes that "[u]pon commencing her employment, Winslett alleges she was immediately subjected to *sexual harassment and sexual assault*," including "allegations of *sexual misconduct* by the site supervisor, Phillip Bailey." Hence, the Agreement qualifies as a "predispute arbitration agreement" under the EFAA, which defines that phrase as "any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement." (9 U.S.C. § 401(1).) And Winslett's civil action against DSI "relates to [a] sexual assault dispute or [a] sexual harassment dispute." (*Id.*, § 402(1); see *id.* § 401(3), (4) [defining "sexual assault dispute" and "sexual harassment dispute"].) Her case thus satisfies

7

the "substantive component" of the EFAA. (*Cornelius, supra*, 133 F.4th at p. 245.)

The parties dispute whether Winslett's case satisfies the "timing component" of the EFAA. (*Cornelius, supra*, 133 F.4th at p. 245.) The statute applies "with respect to any dispute or claim that arises or accrues on or after the date of the enactment," i.e., March 3, 2022. (Pub.L. No. 117–90, § 3 (Mar. 3, 2022) 136 Stat. 26, 28.) DSI argues the parties' dispute arose in February 2022, when Winslett reported the alleged sexual misconduct by Bailey to DSI's general manager, who " 'expresse[d] disagreement or [took] an adversarial posture' " by dismissing Winslett's complaint, pressuring her to retract it, and failing to take corrective action. (Quoting *Kader v. Southern California Medical Center, Inc.* (2024) 99 Cal.App.5th 214, 222 (*Kader*).)

Winslett contends no dispute arose in February 2022 because DSI's agents did not then deny her allegations that Bailey had sexually assaulted and harassed her. Instead they suggested the alleged misconduct was a normal and expected part of the job that had to be tolerated. Thus, in Winslett's view, there was no concrete dispute regarding Bailey's misconduct before her constructive discharge on May 27, 2022. She also maintains that since Bailey sexually assaulted and harassed her repeatedly throughout her employment (Jan. 18, 2022–May 27, 2022), under the continuing violation doctrine her "harassment and hostile work environment claims accrued after the EFAA's effective date, exempting her entire case from mandatory arbitration." We need not decide when exactly the dispute arose, because we agree with Winslett that her claims accrued after the effective date of the EFAA.

Before we can address the merits of Winslett's accrual argument, we must dispose of DSI's objection that she forfeited the issue by not raising it in

the trial court. We usually do not let parties make new arguments in this court because, as DSI points out, " 'it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal.' " (*P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1344.) But there has been no real change. Winslett cited the EFAA in her opposition to the motion to compel arbitration and argued that forced arbitration of sexual harassment cases is contrary to legislatively enacted public policy. She asserted that Bailey repeatedly sexually harassed her and his conduct eventually forced her to resign. At the first hearing on the motion, Winslett's attorney argued that a dispute arose no earlier than March 17, 2022, when DSI retaliated against Winslett by assigning her a graveyard shift and reducing her overtime hours. When questioned by the trial court about the significance of that date, Winslett's attorney responded that because no retaliation had occurred until then, that was the earliest date that any "contention" or "dispute" had arisen. In his view, where the retaliation began *after* the EFAA was enacted on March 3, 2022, the Agreement was unenforceable at Winslett's option.

It is true that Winslett's attorney did not specifically analyze the timing component in terms of the "accrual" of her claim.[4] But the invocation of the EFAA in the opposition papers and the argument of her counsel at the hearing sufficed to state Winslett's general position that the Agreement was

---

[4] This is not totally surprising. It was not until after both hearings on the motion to compel were completed that the Second District Court of Appeal decided the first California case addressing "when a sexual harassment claim 'accrues' under the EFAA where . . . a plaintiff alleges sexually harassing conduct occurring both before and after the EFAA's enactment." (*Doe, supra*, 105 Cal.App.5th at p. 566.)

unenforceable because some of the acts underlying her sexual harassment case occurred after the statute took effect. In our view, this was enough to avoid forfeiting the accrual argument. Moreover, since accrual presents a question of law to be decided based on undisputed facts, we have discretion to consider the issue and exercise that discretion to the extent necessary to reach the issue. (*City of Norco v. Mugar* (2020) 59 Cal.App.5th 786, 793.)

We now turn to the merits of the accrual argument. Courts have interpreted the timing component of the EFAA to mean the statute applies if either the dispute arose on or after March 3, 2022, or the claim accrued on or after that date. (*Memmer v. United Wholesale Mortgage, LLC* (6th Cir. 2025) 135 F.4th 398, 413 (*Memmer*); Cornelius*, supra*, 133 F.4th at p. 246; *Hodgin v. Intensive Care Consortium, Inc.* (S.D.Fla. 2023) 666 F.Supp.3d 1326, 1329; *Doe, supra*, 105 Cal.App.5th at p. 566.) Under the EFAA, "the time a claim accrues means the point at which the statute of limitations clock starts ticking." (*Olivieri, supra*, 112 F.4th at p. 87.)[5]

For a sexual harassment claim based on a series of acts that over time creates a hostile work environment, the time of accrual is the date of the last act in the series, even if prior acts might have been actionable. (*Doe*, at

---

[5] Under the EFAA, "[a] dispute arises when one party asserts a right, claim, or demand, and the other side expresses disagreement or takes an adversarial position." (*Kader, supra*, 99 Cal.App.5th at p. 222.) An employee may register disagreement by "an internal complaint, external complaint, or otherwise," and an "employer [may] expressly or constructively oppose[ ] that position." (*Cornelius, supra*, 133 F.4th at p 247.) "The relevant question is when the parties became adverse to one another." (*Memmer, supra*, 135 F.4th at p. 409.) A claim may accrue before or after a dispute arises. (*Ibid.*) As we explain, we need not decide precisely when the parties' dispute arose because Winslett's sexual harassment claim accrued after the EFAA took effect and that accrual is sufficient to make the statute applicable to her case regardless of when the dispute arose.

p. 572; see *Olivieri*, at p. 88 [hostile work environment claim continues to accrue each time defendant commits act that is part of series of acts that creates hostile work environment].) Winslett asserted a count alleging that sexual harassment in violation of the FEHA created a hostile work environment. (See Gov. Code, § 12940, subd. (j); *Quilala, supra*, 117 Cal.App.5th at p. 86.) That count incorporated the allegations that Bailey "groped [Winslett's] legs and groin area and rubbed himself on her" when she started working for DSI on January 18, 2022, and continued his "unwelcome and discriminatory and harassing conduct" until May 27, 2022, when she "was effectively compelled to resign" due to the "intimidating, hostile, or offensive work environment." When the plaintiff alleges a course of sexually harassing conduct that occurred both before and after March 3, 2022, the EFAA applies. (*Olivieri, supra*, 112 F.4th at p. 78; Doe, at p. 571.)

We accordingly conclude that the EFAA applied to Winslett's case. By filing a complaint in the trial court and opposing DSI's motion to compel arbitration, Winslett elected to render the Agreement unenforceable as to the entire case, not just the sexual harassment claim. (9 U.S.C. § 402(a); *Quilala, supra*, 117 Cal.App.5th at p. 88; *Casey v. Superior Court* (2025) 108 Cal.App.5th 575, 588; *Liu v. Miniso Depot CA, Inc.* (2024) 105 Cal.App.5th 791, 803; *Doe, supra*, 105 Cal.App.5th at p. 577.)[6] The court thus correctly applied the EFAA to deny DSI's motion to compel arbitration and to stay proceedings. Because that is a sufficient basis to affirm the challenged order, we need not decide whether the trial court ruled correctly on Winslett's evidentiary objections or unconscionability defense.

---

[6] DSI "focuses on the threshold issue of [the] EFAA's applicability" and "do[es] not separately challenge" the trial court's decision "extending [the] EFAA to bar the entire case from arbitration."

11

## DISPOSITION

The order denying the motion to compel arbitration and to stay proceedings is affirmed.  Respondent is entitled to costs on appeal.

DATO, J.

WE CONCUR:

McCONNELL, P. J.

RUBIN, J.